NOT DESIGNATED FOR PUBLICATION

No. 112,689

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LUIS MENDOZA,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Opinion filed December 18, 2015.
Reversed and remanded.

*Tessa French*, of Miller Law Firm, LLC, of Liberal, for appellant.

*Russell W. Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: Luis Mendoza appeals the district court's summary denial of his motion for postconviction relief. Mendoza had filed a habeas corpus claim under K.S.A. 60-1507, alleging that the attorney who represented him in plea and sentencing proceedings provided inadequate assistance. He had also filed a motion under K.S.A. 2014 Supp. 22-3210 to withdraw his no-contest plea. In both cases, he filed his claims beyond the 1-year time limit established by the statutes, and the district court concluded that Mendoza had not shown that it would be manifestly unjust to refuse to consider his claims now.

To resolve this appeal, we must answer two questions. First, if Mendoza's claims had been timely filed, would he have been entitled to an evidentiary hearing? Second, if so, does he meet the additional requirements for an evidentiary hearing when the claims aren't timely filed? For Mendoza to succeed on his appeal, we must be able to answer both questions affirmatively.

## FACTUAL AND PROCEDURAL BACKGROUND

Mendoza pled no contest to the rape of an 11-year-old girl who lived next door. The issues before us relate to what happened when he entered his no-contest plea, when he was sentenced, and when he interacted with his court-appointed attorney about those proceedings. Central to all of this is the extent to which Mendoza understood what was going on. Accordingly, we must review the proceedings in some detail.

Mendoza was arrested and charged on October 20, 2008, and the court appointed Razmi Tahirkheli of the public defender's office to represent him.

The case came before the court for preliminary hearing on January 28, 2009. The attorneys notified the court that Mendoza would waive the preliminary hearing. Accordingly, the court began a discussion with Mendoza about the rights he would be giving up by doing so. The court attempted to speak with Mendoza through a court-certified Spanish-language interpreter, and the communication did not go well. At one point, Tahirkheli suggested "breaking it into small increments" to help Mendoza understand what the judge was saying, but that didn't help. Eventually, the interpreter determined that Mendoza spoke another language native to Guatemala, not Spanish. The language, as Mendoza wrote it down, was called Chilchateco. The Spanish interpreter said, "I can tell right away he speaks a different language." She said he did not appear to understand what she was saying. So the court set the matter over to "see if we cannot arrange a more acceptable interpreter for future hearings."

2

Two days later, the parties reconvened in court, this time with a court-certified Spanish-language interpreter and another person who said he knew Chilchateco. One interpreter translated from English to Spanish, the other from Spanish to Chilchateco. (The court ordered that the public defender pay for the second interpreter. Although the court indicated that the public defender could get reimbursed, presumably from the Board of Indigents' Defense Services, we note that the court is obligated to provide a qualified interpreter, K.S.A. 75-4351(b); that this cost is to be paid by the county as a court operating cost, see K.S.A. 20-348; and that "[a]t no time shall the fees for interpreter services be assessed against the person whose primary language is one other than English . . . ." K.S.A. 75-4352(a). The Board of Indigents' Defense Services has the responsibility to provide an interpreter only outside the courtroom, such as when facilitating client-attorney consultations. See Att'y Gen. Op. No. 2011-9.)

Communication was certainly better—Mendoza agreed at the start that he could understand what the second interpreter was saying. But there were still problems. Within a few minutes, a fairly simple question brought a question in response:

> "THE COURT: . . . . Now, Mr. Mendoza, do you understand that you're charged with a crime that we call a felony in the State of Kansas?

> "THE DEFENDANT: What do you want me to say? Do you want me to say 'yes' or 'no'?"

A short time later, one of the interpreters said that Mendoza simply wasn't understanding the proceeding:

> "THE COURT: Thank you. You would also, if you had a preliminary hearing, you would have a right to call your own witnesses. And you could even get a court order to make people appear in court to testify on your behalf. Also, you would have the right

3

to testify on your own behalf, or you could choose not to testify; no one could make you testify.

"THE DEFENDANT: I will not answer that.

"THE COURT: You will not answer?

"THE DEFENDANT: What is it?

"THE COURT: That's just what you're entitled to do if you had a preliminary hearing.

"MR. TAHIRKHELI: All he needs to know, if he understands that right.

"INTERPRETER LAMBERT: He just doesn't understand what is happening in the hearing."

The court went on to try to explain Mendoza's rights regarding the preliminary hearing. Mendoza responded, as relayed in third person by the interpreter, with a comment about the plea offer, which he tried to accept. The court ignored that comment, returned to explaining about the preliminary hearing, and accepted Mendoza's knowing and voluntary waiver of that hearing:

"THE COURT: Okay. Once again Mr. Mendoza, I'm explaining the rights that you have, if you chose to make the State present evidence at a preliminary hearing. And I understand that you are wishing to waive your right today.

"THE DEFENDANT: Yes, I want to.

"THE COURT: Yes. But I want to make sure that you understand everything you would be entitled to do if you chose to in fact have a preliminary hearing. For example, if we had a preliminary hearing, you could testify. You could come up here, sit in this chair and tell me anything you wanted me to know about your charges.

4

"INTERPRETER LAMBERT: He says because the County Attorney will be seeing.

"THE COURT: I'm sorry?

"INTERPRETER LAMBERT: He says he will not do that because the County Attorney will be doing it.

"THE COURT: Okay. Mr. Mendoza, I understand, but nobody could make you testify if you chose not to, as you just indicated, okay?

"THE DEFENDANT: Yes.

"THE COURT: Now, finally, if you give up your right to a preliminary hearing, you cannot have it back.

"INTERPRETER LAMBERT: So if he accepted this plea offer, then that will not be returned back to him?

"THE COURT: Even if you choose to change your mind about the plea offer, you will not have your right to a preliminary hearing restored.

"INTERPRETER LAMBERT: He is accepting the offer.

"THE COURT: And are you waiving your right to a preliminary hearing today, understanding that you will not be able to get it back?

"THE DEFENDANT: Yes.

"THE COURT: I'll make the finding that the defendant has knowingly, intelligently and voluntarily waived his right to a preliminary hearing."

5

The court then proceeded with arraignment. Mendoza agreed that the charge didn't need to be read out loud, but when the court indicated that the State had agreed to dismiss aggravated-kidnapping and aggravated-burglary charges, Mendoza asked what "aggravated" meant. The court replied, "It means more serious than the other charges." (Mendoza points out on appeal that this wasn't a correct response; the rape charge was obviously the most serious charge he faced.)

Finally, the parties proceeded to discuss the plea agreement and Mendoza's desire to enter into it. Mendoza confirmed that he understood that he would plead no contest to rape and that the other charges would be dismissed. The judge then noted that Mendoza's attorney had told the judge that "they have also reached an agreement wherein the State and your attorney will request that you be sentenced according to the guideline grid which I'm holding up right now." When the judge held up a copy of that grid, however, Mendoza said he hadn't seen it. The judge asked directly, "[H]ave you seen that before?" Mendoza said he had not. So the court allowed Tahirkheli to have a private conversation about it. The judge then attempted to confirm Mendoza's understanding of that part of the plea agreement, though the only thing Mendoza actually confirmed was that he could not ask for less time than shown on the grid:

> "MR. TAHIRKHELI: We're ready, Judge.
>
> "THE COURT: Thank you. Mr. Mendoza, you have before you there a Kansas Sentencing Guideline grid. You just visited with your attorney about that grid. It's my understanding that you're going to be making a request that I sentence you pursuant to that grid as part of your plea agreement. Is this true?
>
> "THE DEFENDANT: That I agree with that? Is that what it is?
>
> "THE COURT: It's my understanding you're going to ask that I sentence you in accordance with the grid that's before you?

6

"THE DEFENDANT: Did I agree with that?

"THE COURT: Is that part of the agreement? Yes or no, please.

"THE DEFENDANT: Is what we have talked about before?

"THE COURT: Yes.

"THE DEFENDANT: So I will not be able to ask to lower those time?

"THE COURT: No, you will not. Is this part of your agreement?

"THE DEFENDANT: Yes, I agree."

The court then told Mendoza that it wasn't required to follow the grid, and Mendoza said he understood and still wanted to go ahead with the plea.

"THE COURT: The record will reflect that the defendant had in front of him a copy of the Kansas Sentencing Guideline grid for nondrug offenses.

"Now, my next question, Mr. Mendoza, is that you understand that the charge you're facing is what we call a nongrid, which means I can put you in prison for life, and that you would not have any chance of being released from prison for at least 25 years. Now, nobody—I haven't made my mind up yet, but I just need to make sure you understand that that is a possibility. Do you understand?

"THE DEFENDANT: Yes.

"THE COURT: Thank you. Now, Mr. Mendoza, knowing and understand this, is it still your desire to follow through with this plea of no contest today?

"THE DEFENDANT: Yes."

7

The court then attempted to explain other rights Mendoza was giving up, like the right to a jury trial. Mendoza indicated that he did not understand why the court was giving these explanations, saying, "I have told you before that I am taking a guilty plea" and "I understand that. But I don't want to take it to trial." Mendoza said he did understand that if he entered a no-contest plea, he would not have a jury trial. He also agreed that by entering a no-contest plea, he would be telling the court he did not "wish to fight" the rape charge. And when the court asked, "You understand what we're doing?" Mendoza replied, "Yes."

The judge then reminded Mendoza, "You're charged with rape, an off-grid felony, and I could sentence you to life imprisonment with no possibility of parole for 25 years." Mendoza said he understood. Mendoza then entered his no-contest plea, the prosecutor summarized the evidence the State would have presented, and the court accepted the plea and found Mendoza guilty of rape. The court found that Mendoza had made the plea "freely and voluntarily, with the full understanding of its consequences." The court ordered a presentence investigation and set sentencing for March 6. The court said to "bring the other interpreter," presumably referring to the Chilchateco interpreter, to the March 6 hearing.

But the Chilchatelco interpreter was not at the sentencing hearing. The judge said he had "been made aware" that Mendoza now "can speak and understand the Spanish language," but Mendoza said he didn't understand much, and the Spanish interpreter said that "[m]aybe if we take baby steps" and use simple language, Mendoza would understand what was going on:

> "THE COURT: And for the record, the defendant is also assisted by the court's interpreter; however, we do not have an interpreter for the Guatemalan dialect the defendant speaks.

"Mr. Mendoza, I've been made aware that you can speak and understand the Spanish language?

"THE DEFENDANT: I speak a little, I don't understand a lot. My dialect—I have a different dialect.

"THE COURT: Are you having trouble understanding the court interpreter and communicating with her?

"THE DEFENDANT: No.

"THE INTERPRETER: Could I say something, Judge Peterson?

"THE COURT: Yes.

"THE INTERPRETER: Maybe if we take baby steps, you know, really lame language, we can get him to understand.

"THE DEFENDANT: Maybe yes, I can try.

"THE COURT: Okay. I'm going to make the finding that the defendant understands the Spanish language sufficiently for us to proceed today.

"Ms. Johnson, do you have any objection to that?

"[State's attorney] MS. JOHNSON: No.

"THE COURT: Mr. Tahirkheli?

"MR. TAHIRKHELI: No, Your Honor."

The court then allowed Tahirkheli to have a 10- to 15-minute discussion with his client about what would take place at the hearing. Tahirkheli said he had no issue during

9

that conversation communicating with Mendoza through the Spanish-language interpreter.

After that, the defendant was asked to speak only once more before he was sentenced. He asked for a lower sentence, even though he had agreed at the plea hearing that he could not do so at sentencing:

"THE COURT: Mr. Mendoza, do you have anything you wish to say before I pronounce sentence upon you?

"THE DEFENDANT: I just want to beg and ask if the sentence could be lowered; I have family. But if it can't be done, so be it.

"THE COURT: Anything else?

"THE DEFENDANT: That's all.

"THE COURT: Thank you."

The court then rejected the sentence jointly recommended by the State and the defense and sentenced Mendoza to life in prison with no possibility of parole for 25 years. The judge said that the crime in this case was "the most heinous and degrading act I've ever had the displeasure of being associated with in the criminal justice field, as a prosecutor, as a defense attorney, and my short time as a judge."

Mendoza appealed, primarily regarding the denial of the lower sentence that the parties had recommended as part of the plea agreement. But the Kansas Supreme Court denied his appeal in a decision filed August 19, 2011. *State v. Mendoza*, 292 Kan. 933, 258 P.3d 383 (2011). The mandate on appeal was issued on September 14, 2011.

10

Mendoza filed a combined habeas corpus motion under K.S.A. 60-1507 and motion to withdraw his plea on October 25, 2013, more than 2 years after the Kansas Supreme Court's decision. K.S.A. 60-1507(f)(1) provides that habeas claims be filed within 1 year of the final order of the appellate court on direct appeal; K.S.A. 60-1507(f)(2) allows that deadline to be extended "only to prevent a manifest injustice." Similarly, K.S.A. 2014 Supp. 22-3210(d)(2) allows a motion to withdraw a plea after sentencing only "[t]o correct manifest injustice." In addition, under K.S.A. 2014 Supp. 22-3210(e), such a motion must be made within 1 year of the final order of the appellate court on direct appeal unless the defendant shows "excusable neglect" for the late filing.

In the motion, Mendoza first claims that he didn't understand what was happening during the processing of his case: "Mr. Mendoza had no idea what was occur[r]ing at any of the court proceedings. He was simply paroting [*sic*] what his attorney informed him to say. Agreeing with the judge to get the plea he was told he would receive." He said that he was "[u]nable to effectively communicate with anybody, his attorney included." He also said that even the Chilchateco interpreter "didn[']t speak Chilchateco fluently" so that he was "often confused [even] as to what [that] interpreter was saying."

Mendoza next argued that his attorney provided inadequate representation. He noted that the attorney didn't know before it came out at the hearing on January 28, 2009, that Mendoza spoke Chilchateco, not Spanish, and didn't know of Mendoza's education level. Yet that hearing was intended to have been the one at which Mendoza would have waived his rights and entered the plea, he asserts. So he says his attorney should have realized by that point how little Mendoza knew about what was taking place.

Mendoza also claims that Tahirkheli promised that he would receive a 166-month sentence "if he just went along with the judge."

11

*Would Mendoza have been entitled to an evidentiary hearing if he had timely filed these claims?*

Mendoza supported his request to withdraw his plea by arguing that a plea must be knowingly and understandably made but that he was not able to understand the proceedings. He also argues that the judge's comment that the aggravated charges, which were being dismissed, were the "more serious" ones was misleading.

For a habeas claim filed timely under K.S.A. 60-1507, the district court must grant an evidentiary hearing when the motion sets forth facts that, if true, would entitle the defendant to relief. *Swenson v. State*, 284 Kan. 931, Syl. ¶ 3, 169 P.3d 298 (2007); *State v. Holmes*, 278 Kan. 603, 629, 102 P.3d 406 (2004). The court applies the same standards when deciding whether an evidentiary hearing is required on a motion to withdraw a plea. See *State v. Fritz*, 299 Kan. 153, 154-55, 321 P.3d 763 (2014). In either case, unless the motion, court files, and other records available to the court conclusively show that the defendant is not entitled to relief, the court should hold an evidentiary hearing. And when, as here, the case was decided based upon the motion plus the papers and records in the court file, an appellate court has equal access to those materials and must decide independently whether a hearing is required, without deferring to the district court. 299 Kan. at 155.

Mendoza's allegations, combined with the records in the court's file, provide a sufficient basis for an evidentiary hearing both on the ineffective-assistance-of-counsel claim and for withdrawal of his plea. His attorney had a duty to advise him about the plea, the range of possible penalties, and the choices available to him, as well as to provide adequate representation to him in court. See *State v. Murithi*, 273 Kan. 952, Syl. ¶ 2, 46 P.3d 1145 (2002).

12

Tahirkheli seems to have been unaware of any communication problem until it was impossible to proceed with the court hearing on January 28, 2009. Yet the charging affidavit in the district court's file showed that a law-enforcement officer attempting to interview Mendoza through a Spanish interpreter had found that "Mendoza was having a difficult time understanding his Miranda Rights and could not seem to make up his mind if he wanted an attorney before any questioning." The officer referenced Mendoza's "inability to . . . comprehend basic questions."

Somehow, Tahirkheli appears to have represented Mendoza for at least 2 months without being aware of the language problem. And after he realized it, Tahirkheli still did not make sure that a Chilchateco interpreter was available at sentencing. If Mendoza's allegation that he didn't understand what was going on during the proceedings is true—and there certainly is some support in the record for it—it's hard to see how Tahirkheli's representation could be considered adequate.

To set aside a plea based on ineffective assistance of counsel, the defendant must make two showings: (1) that the attorney's work was below reasonable standards and (2) that there's a reasonable probability that, but for the attorney's errors, the defendant wouldn't have entered the plea and instead would have gone to trial. *State v. Adams*, 284 Kan. 109, 118, 158 P.3d 977 (2007). On the first requirement, we recognize that a defendant's counsel is not ineffective merely because a trial judge declines to follow a plea agreement. *McGoldrick v. State*, 33 Kan. App. 2d 466, 470, 104 P.3d 416, *rev. denied* 279 Kan. 1007 (2005). Here, however, the allegations made, if true, show inadequate advice and insufficient communication even to recognize an obvious language barrier. On the second requirement, we understand Mendoza's claim to be that he would not enter a plea without understanding the proceedings, and he has presented a strong basis upon which to conclude that he didn't understand them. In his motion, Mendoza argued that he was not required to meet this second requirement under the limited exception provided by *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed.

2d 657 (1984), which applies when an attorney totally fails to provide representation. See *State v. Adams*, 297 Kan. 665, 669-71, 304 P.3d 311 (2013). There is some support for Mendoza's position. See *Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 901-02 (E.D. Mich. 2001) (applying *Cronic* exception where defense counsel failed to get interpreter needed to communicate with client); *Ex Parte Cockrell*, 424 S.W.3d 543, 554-57 (Tex. Crim. 2014) (finding prejudice requirement met where defense attorney did not get needed interpreter so that defendant could fully participate in proceedings). But we need not decide that question because, in its appellate brief, the State has not specifically argued that Mendoza failed to meet this second requirement. Accordingly, we conclude that he has made a sufficient allegation to require an evidentiary hearing.

In considering whether to allow a defendant to withdraw a plea, Kansas courts generally consider what are called the "*Edgar* factors": "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *Fritz*, 299 Kan. at 154 (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). On the first factor, the defendant does not need to show that the attorney's representation was so poor that it was below constitutional standards for effective counsel; mere "lackluster advocacy" may be sufficient. *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). Of course, for a motion to withdraw plea filed after sentencing, a defendant must also show manifest injustice. K.S.A. 2014 Supp. 22-3210(d)(2). In making that determination, the *Edgar* factors are front and center: "Kansas courts review at least three factors, commonly known as *Edgar* factors, . . . when considering whether a defendant has demonstrated the requisite manifest injustice." *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011); accord *State v. Morris*, 298 Kan. 1091, 1100-01, 319 P.3d 539 (2014).

Once again, if the motion had been timely, an evidentiary hearing would have been required. Mendoza has raised substantial questions about whether he was

14

represented by competent counsel, whether he was misled or treated unfairly, and whether he understood the plea terms.

On that point, we note that one of the key ingredients of the plea agreement was the parties' recommendation on sentencing. Here, we must provide some additional background.

For most crimes, Kansas statutes provide a range of "guideline" sentences the sentencing judge must choose from in felony cases. The sentences are found on a "grid" with 10 severity levels of felonies designated by numbers on the side (1 is the most serious, 10 the least serious) and 8 levels of criminal-history scores designated by letters on the top (A is the most serious, I designates no past convictions). If the court were to use the sentencing grid in Mendoza's case, since rape of a child under age 14 is a severity-level-1 felony and Mendoza had no prior offenses, it would use the sentencing box corresponding to a severity-level-1 felony and a criminal-history score of I. That box would provide a sentencing range between 147 and 165 months in prison. K.S.A. 2008 Supp. 21-4704(a); see generally *State v. Pearce*, 51 Kan. App. 2d 116, 118, 342 P.3d 963 (2015).

But a new law passed by our legislature in 2006 applied to Mendoza's case. That law, called Jessica's law, provided for a life sentence with no chance of parole for at least 25 years for the rape of a child under 14 years old. K.S.A. 21-4643(a)(1)(B). Because this sentence is not found on the sentencing grid, it's referred to as an "off-grid" sentence. Once Mendoza was found guilty of the rape of a child under 14 years old, he would receive this Jessica's Law sentence unless the district court granted a motion for a departure sentence.

A departure sentence could be granted only if the judge found "substantial and compelling reasons" to do so after "a review of mitigating circumstances." K.S.A. 21-

15

4643(d). For the crime of rape of a child under 14, a sentencing judge could not change the sentence from prison to probation. The judge could reduce the length of the prison sentence, but to no less than half "of the center of the range of the sentence" for the crime. K.S.A. 2008 Supp. 21-4719(a); see K.S.A. 21-4716(c)(2)(F)(i). So in Mendoza's case, the judge could grant a departure motion to no less than 78 months in prison.

As part of their plea agreement, the parties agreed to recommend a grid sentence rather than the off-grid sentence called for under Jessica's Law. But in the transcript of the plea hearing—and even the sentencing hearing—no one mentioned the length of the sentence the parties would recommend or the specific grid box they would recommend using to determine the sentence. Nor did anyone explain at the plea hearing that the judge could grant a departure sentence only for substantial and compelling reasons.

In a written departure motion filed after the plea hearing but before sentencing, Tahirkheli asked on the defendant's behalf that the court depart down "from the off grid sentencing penalty and place the Defendant back on the Kansas Sentencing Grid at a severity Level I felony." The written motion didn't specify the length of sentence Mendoza was seeking. But for Mendoza, who had no criminal record, the severity-level-1 felony grid box would have called for a sentence between 147 and 165 months in prison. K.S.A. 2008 Supp. 21-4704(a). Without a downward departure, however, Mendoza would receive the life sentence the court provided, with no possibility of parole for 25 years.

Even a well-educated, English-speaking defendant would need some help to understand the key elements of the plea agreement Mendoza entered into with the State. There is substantial question about how well Mendoza understood the plea agreement and the potential sentences he might receive, as well as whether Tahirkheli provided adequate assistance to him regarding these matters. Had his claims been timely filed, Mendoza would have been entitled to an evidentiary hearing regarding them.

16

*Is Mendoza entitled to an evidentiary hearing even though he didn't timely file his claims?*

So far, we have determined that Mendoza would have been entitled to an evidentiary hearing had his habeas motion and plea-withdrawal motion been timely filed. But since he filed them after the statutory deadlines, we may hear the motions only to prevent manifest injustice. K.S.A. 60-1507(f)(2); K.S.A. 2014 Supp. 22-3210(d)(2). In addition, for us to hear his plea-withdrawal motion, he must show some excusable reason for filing late. K.S.A. 2014 Supp. 22-3210(e).

In the habeas setting, manifest injustice occurs when *not* hearing the motion would be "obviously unfair" or "shocking to the conscience." *Vontress v. State*, 299 Kan. 607, 614, 325 P.3d 1114 (2014). To make this determination, courts now consider three non-exclusive factors set out by the court in *Vontress*:

> "whether (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.,* factual, not legal, innocence." 299 Kan. at 616.

For plea-withdrawal motions, a court should still focus on the *Edgar* factors. *Morris*, 298 Kan. at 1100-01; *Bricker*, 292 Kan. at 244-45. We have already concluded that the *Edgar* factors support Mendoza's request for an evidentiary hearing on his claims.

With regard to the first *Vontress* factor, Mendoza argues that his delay was caused by his lack of familiarity with the legal system, his language difficulties, and the lack of help in a form he could access. He complains, for example, that he had no Spanish (or other non-English) language legal materials available in his prison. The State counters

17

that he says he cannot read anyway, in any language. But in this case, we have someone who demonstrated difficulty understanding the legal concepts involved during the proceeding who has, based on the allegations of his motions, not understood them. He contends that he has learned to speak Spanish while in prison, and he also indicated that he received assistance there in putting together his motions. It seems understandable that this process—learning enough Spanish to communicate with other prisoners who could assist him in preparing English-language motions—would take time.

As to the second *Vontress* factor, Mendoza's motions certainly raise substantial issues of law and fact that deserve the district court's consideration. The plea and sentencing are critical stages of a criminal proceeding—defendants must be able to understand the proceedings if they are to be fairly treated.

Mendoza has not presented any claim of actual innocence—the third *Vontress* factor. But no one factor determines whether we find that Mendoza would experience manifest injustice if we do not hear his motions. See *Vontress*, 299 Kan. at 616-17.

We conclude that Mendoza's allegations meet the manifest-injustice standard. The transcripts suggest that Mendoza was genuinely uninformed about the American legal system before the court tried to explain various concepts to him. While the court tried to do so, the transcripts also suggest that its effort wasn't altogether successful. Mendoza's additional allegations underscore that conclusion.

We also find, on the unique facts presented here, that he has shown excusable neglect for the late filing, thus allowing a court to hear his motion to withdraw plea. Given his claimed lack of understanding of the proceedings as they took place, the showing of inadequate representation made in his motion (which, though not yet proven, separately requires an evidentiary hearing), his unrepresented status while in prison, and his need to learn Spanish to obtain even informal help from other inmates in preparing a

18

habeas motion and plea-withdrawal motion, the delay found here is understandable and represents excusable neglect.

We therefore reverse the district court's judgment, which dismissed Mendoza's habeas motion and plea-withdrawal motion. We remand the case to the district court for further proceedings consistent with this opinion.