No. 107,768

STATE OF KANSAS, *Appellee*, v. ANDREW H. MORRIS, *Appellant*.

(319 P.3d 539)

Opinion filed March 7, 2014.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Natalie A. Chalmers*, assistant solicitor general, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Andrew H. Morris is imprisoned after conviction on two counts of felony murder and one count of aggravated arson. Although all involved in Morris' sentencing—the prosecution, the defense, and the district court judge—recommended that Morris serve his time in a security hospital, the Department of Corrections has chosen to house him in one of Kansas' penitentiaries. This appeal arises out of the denial of Morris' motion to withdraw his no contest pleas to the three charges. Morris argues that the denial was an abuse of discretion.

## FACTUAL AND PROCEDURAL BACKGROUND

At least the opening elements of the factual and procedural context helpful to decide this case can be borrowed from our earlier decision on Morris' direct appeal of the consecutive nature of his felony-murder sentences:

"The State charged Andrew Morris with two counts of felony murder in violation of K.S.A. 21-3401(b) and one count of aggravated arson in violation of K.S.A. 21-3719 for setting fire to a home in Pittsburg, Kansas, on February 11, 2006. Two people inside the home, Waylon S. Boots and Stephen J. Hayes, died as a result of the fire.

"Prior to trial, the court ordered Morris to undergo a psychological examination to determine whether he was competent to stand trial. On May 30, 2006, the

court found Morris incompetent to stand trial and ordered him committed to Larned State Security Hospital (LSSH) for a 90-day examination to determine whether Morris may attain competency to stand trial in the foreseeable future.

"On August 24, 2006, the trial court found that, based on the information from LSSH, Morris had a substantial probability of attaining competency to stand trial. The court further ordered Morris to remain at LSSH for an additional 6 months, at which time the court would again take up the issue of Morris' competency for trial. Morris remained at LSSH until November 16, 2006, when LSSH discharged him with a recommendation to the court that it find him competent to stand trial. On April 2, 2007, the trial court again found Morris incompetent and ordered him committed to LSSH. Morris remained at LSSH until October 23, 2007, when it discharged him with another recommendation to the court that it find Morris competent to stand trial. The trial court held a competency hearing on January 24 and 30, 2008, and, after hearing all the evidence, took the matter under advisement. On February 20, 2008, after reciting its extensive findings, the court announced its determination that Morris was competent to stand trial.

"On April 21, 2008, the trial court held the preliminary hearing, finding probable cause to believe Morris committed the crimes of felony murder and aggravated arson. On June 27, 2008, at arraignment, Morris pleaded not guilty on all counts and the court set the matter for trial." *State v. Morris*, No. 102,051, 2010 WL 2816241, at *1 (Kan. 2010) (unpublished opinion).

On November 7, 2008, defense counsel Edward Dosh filed a motion to suppress incriminating statements Morris had made to investigators, including his confession to setting the fire. The motion alleged that investigators failed to inform Morris of his *Miranda* rights and argued that the statements were uninformed and involuntary. Attached to the motion was a report by a licensed psychologist who had concluded that Morris was incapable, under the circumstances, of knowingly and intelligently waiving his *Miranda* rights.

Before the motion to suppress was heard, on November 14, 2008, Morris entered into a plea agreement with the State. Under that agreement, he would plead no contest to the three charges. In exchange, the State would recommend that the life sentences for the felony murders run concurrently and that the "Court recommend to the Secretary of Corrections that [Morris] be placed in a secure mental health facility to serve [his] sentence."

The plea agreement contained the following paragraph:

"I offer my plea of 'NO CONTEST' freely and voluntarily, and further state that my plea of no contest is not the result of any force or threats against me, or of any promises made to me other than those noted in this petition."

At the plea hearing, the judge explained the charges Morris was facing, described the maximum punishment allowable for each, and heard Morris' pleas of no contest. The judge and Morris then engaged in the following colloquy:

"THE COURT: Okay. Now, I'm going to ask you some questions, Mr. Morris, to make certain that your three pleas of no contest are knowing and voluntary. That is I want to make sure that you understand what you are doing when you plead no contest to these three charges. And I want to make sure that you are doing this voluntarily, that is that nobody is forcing you to enter into these pleas of no contest against your will. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: And, again, if I ask you something or if I say something or if I use some words that you don't understand, you need to tell me that, and I will further repeat myself. You can always consult or talk to your lawyer Mr. Dosh. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Now, let me ask you this. Are you pleading no contest to each of these three charges knowingly and voluntarily?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Are you doing this of your own free will?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Have you had enough time to talk to Mr. Dosh, your lawyer, about your decision to plead no contest to these three charges?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Now, let me explain—let me explain a no contest plea. A guilty plea is when you admit that you did this, did these three crimes, that you committed these three crimes. You come into Court and you say, Judge, I'm going to plead guilty. I admit that I committed these three crimes. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: A no contest plea, however, you are not saying you are guilty but you are not saying you are innocent. When you plead no contest, you are telling me, Judge, I do not contest these three charges. I—I'm giving you—I'm allowing you to find me guilty based upon my pleas of no contest. I'm not going to contest the charges. I'm not going to fight it. I'm not going to go to trial. I'm just going to plead no contest and, in doing so, I'm going to allow you to enter a finding of guilty against me on these three charges.

"So when you plead no contest, you are not pleading guilty but you are going to be found guilty if I accept your pleas and when you are sentenced, you will be sentenced as a guilty person. Do you understand me?

"[THE DEFENDANT]: Yes, Your Honor.

"[THE COURT]: Now, knowing that you are going to be found guilty if I accept your pleas of no contest, knowing that you are going to be found guilty, do you still desire to follow through with your pleas of no contest?

"[THE DEFENDANT]: Yes, Your Honor.

[District judge explaining rights defendant waives when pleading no contest.]

"THE COURT: Now, when you plead no contest, do you understand a trial will not be conducted?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: So you give up your right to trial and you give up all of those rights that I just told you about. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Now, are you giving up your right to trial and all of those rights freely and voluntarily?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Now, do you understand that when I say freely and voluntarily, I mean this is a product—that you are doing it of your own accord. Nobody is forcing you to do this. Do you understand that?

"THE DEFENDANT[:] Yes, Your Honor.

"THE COURT: And you are doing this freely; is that correct? And if I'm incorrect, you need to tell me that.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Do you understand the plea agreement, have you had enough time to go over the plea agreement with your lawyer?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Do you have any questions of myself or of your lawyer Mr. Dosh with regard to anything that might be in the plea agreement?

"THE DEFENDANT: No, Your Honor.

"THE COURT: Do you feel that you fully understand the plea agreement?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Have you had enough time to talk to your lawyer about the plea agreement?

"THE DEFENDANT: Yes, Your Honor.

. . . .

"THE COURT: Now, any agreement you may have with the State of Kansas with the prosecution that would call for you to be sentenced in a certain manner, for you to receive a certain sentence, I'm not bound by that agreement. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Knowing that, do you still desire to follow through with your plea agreement?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: It is very important that you understand this. You have a plea agreement with regard to sentencing and that's fine. It is done all the time but I'm not bound by that. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Okay. And, again, knowing that, you still do desire to follow through with your plea; is that correct, sir?

"THE DEFENDANT: Yes, Your Honor.

. . . .

"THE COURT: And, again, I know I've asked this a few times but it is really important that you understand what we are doing today. You're pleading no contest. Based upon your three plea[s] of no contest, I will find you guilty of these three crimes. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: And are you doing this voluntarily of your own free will?

"THE DEFENDANT: Yes, Your Honor.

. . . .

"MR. DOSH: What he's asking you, Andy, number one, do you understand what you are doing here today?

"THE DEFENDANT: Yes.

"MR. DOSH: And you understand that by entering this plea of no contest to these three charges, he's going to make a finding of guilt and you will be convicted of those three charges. Do you understand that?

"THE DEFENDANT: Yes.

"MR. DOSH: And do you understand that sentencing will come at a later date, that we've got a plea agreement with the prosecutor's office but the Judge does not have to follow that. Do you understand that?

"THE DEFENDANT: Yes.

"MR. DOSH: And I have repeatedly told you, have I not, that there is no guarantee[] that he will go along with the agreement. I[t] is our hope that he will but there is no guarantee[]. Have I told that [to] you repeatedly?

"THE DEFENDANT: Yes.

"MR. DOSH: And you understand what I mean by that, don't you?

"THE DEFENDANT: Yes.

"MR. DOSH: And it is still your desire to go ahead and enter your plea because you think this is probably the best outcome in the long run that you can [get] out of this matter. Is that a fair statement?

"THE DEFENDANT: Yes.

"MR. DOSH: Okay.

"THE COURT: And you did understand what Mr. Dosh was just asking you, Mr. Morris?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: All right. Now, I want . . . you to think, is there anything else that you want to ask me about or is there anything I've said that you have not understood?

"THE DEFENDANT: No, Your Honor.

"THE COURT: So have you been able to understand the proceedings today, what we've done today, have you been able to understand it?

"THE DEFENDANT: Yes, Your Honor.
"THE COURT: And you understand you are going to be found guilty of these three crimes?
"THE DEFENDANT: Yes, Your Honor.
"THE COURT: All right. The Court will accept your three pleas of no contest, Mr. Morris, I will find that all three pleas of no contest are knowing and voluntary and that . . . they are entered with concurrence of counsel."

At a hearing 3 months later, the judge sentenced Morris to two consecutive life terms on the felony murders and 66 months on the aggravated arson to run concurrent to the life terms. The judge also "strongly recommend[ed] that [Morris] be incarcerated in a State security hospital during his sentence." After announcing the sentence, the district judge asked Morris if he had any questions. Morris responded: "I am going to appeal this. I didn't do this. I have proof that I didn't do it." The judge thanked Morris for his comments and then concluded the hearing.

The journal entry of sentencing again set out the judge's placement recommendation: "THE COURT STRONGLY RECOMMENDS THAT THE SECRETARY OF CORRECTIONS TRANSFER DEFENDANT TO THE STATE SECURITY HOSPITAL TO SERVE HIS SENTENCE. SEE K.S.A. 75-5209." The parties agree that Morris' placement decisions are in the hands of the Department of Corrections, see K.S.A. 21-4603d(a)(1); K.S.A. 75-5209, and the Department has decided that Morris is to be housed in a penitentiary rather than a security hospital.

After Morris' unsuccessful appeal of the judge's decision to make the life sentences consecutive rather than concurrent, Morris filed the motion to withdraw plea underlying this appeal. Morris argued that his motion should be granted because: (1) the district judge failed to advise him of the maximum penalties he was facing; (2) the district judge failed to ask specifically if Morris' plea had been induced by promises; (3) there was no factual basis for the plea; (4) Dosh failed to move to dismiss on speedy trial grounds; (5) Dosh failed to file a timely motion to suppress and to resolve it before the pleas were entered; (6) Dosh failed to conduct independent research into the State's case; (7) the district judge should have *sua sponte* dismissed on speedy trial grounds; (8) the district

judge should have *sua sponte* determined the merits of the motion to suppress before accepting Morris' pleas; and (9) Morris did not comprehend the meaning of the no contest plea. Jason Wiske was appointed to represent Morris on the motion. Wiske filed an amendment to Morris' motion, arguing that the district judge failed at the plea hearing to inform Morris of his right against self-incrimination.

The motion prompted an evidentiary hearing in district court, in which Wiske asked Dosh why he did not have the motion to suppress Morris' statements resolved before the no contest pleas were entered. Dosh responded:

"I can't tell you specifically. But I would, based upon my experience, it's probably because it's like everything else in this business, you get crammed in for time and, you know, you got to prioritize things. I have got other cases going on and—and, you know, it's just a matter of getting to it and getting it done."

Dosh testified that he had explained to Morris, before Morris entered his pleas, that the judge would not have to follow the recommendations in the plea agreement. Dosh also said he told Morris that "we can make a recommendation in your sentence that you go to Larned or some kind of facility like that. But, number one, that was just [a] recommendation [for] the Secretary of Corrections; they place you wherever they want to place you." Dosh also testified that Morris "probably doesn't understand the concept of no contest, although I attempted to explain it to him . . . a number of times."

Morris also testified during the hearing on his motion to withdraw plea. He said that he was confused at times during the plea negotiations and hearing, but generally he understood what was going on at those times.

"[Q.] What was your understanding of what would happen if you entered your no contest statement on November 14th, 2008?

"A. If I entered my statement, I—I would go to a state prison for life.

"Q. Andy, do you remember any discussions with Ed [Dosh] about a recommendation that you be sent to the prison hospital at Larned?

"A. Yeah. I was supposed to go to the prison state hospital, but they may turn around and decide to put me in a prison.

. . . .

"Q. Did you understand that Judge Noland could have sentenced you to prison?

"A. Yeah. At that time, I understood he could send me to the prison instead of a state hospital. That's why I am trying to get it withdrawn today.

"Q. Andy, did you feel pressured to enter your no contest statements in any way?

"A. No. Not at that time."

After Morris testified, Wiske asked the district judge to take judicial notice of the fact that Morris had trouble "understanding abstract principles" and "cannot think abstractly." Wiske then read transcript excerpts from an earlier competency hearing at which witnesses had testified about Morris' limited ability to think abstractly.

In response to the evidence and argument, the district judge observed initially that Morris had been informed of the maximum penalties for the charges at both his arraignment and plea hearing and that abstract reasoning was unnecessary to understand that "a life sentence is just that; it is a life in prison." The judge also read portions of the plea hearing transcript in which he had asked Morris whether the pleas were entered freely and voluntarily. The judge expressed satisfaction that Morris had not been pressured to enter his pleas, and he explained that the case file and the evidence presented at the preliminary hearing were adequate to support the factual basis for the pleas.

The judge also addressed Morris' attempt to demonstrate that Dosh had provided ineffective assistance. The judge first noted that Morris had personally waived his right to a speedy trial at arraignment. Thus Dosh was not ineffective for not filing a motion to dismiss for an alleged speedy trial violation. Next the district judge noted that the motion to suppress had been filed after the motion deadline but that it was scheduled to be heard before trial. The judge said, "[I]t's not unusual for Counsel to file motions a few days late. I see that routinely." Then the district judge continued:

"[R]outinely, defendants leave cards on the table when they enter a plea. Routinely, when defendants enter pleas, they still have potential defenses, potential legal arguments to present that they waive, that they give up through the process of entering the plea.

"So the fact that the motion to suppress was not addressed is nothing that's out of the ordinary. It's routinely done.

"And so I just don't find any error in Mr. Dosh, number one, in failing to file the motion because he did, in fact, do so, and in not having it heard. The State gave Mr. Dosh a timeline [to accept the plea agreement], and that is routinely done."

The district judge also said: "[A]s a very practical matter, even had we conducted the hearing to determine whether your confession should be suppressed, there just wasn't much of a chance that would have been granted."

Regarding Morris' allegation that Dosh failed to do independent research on his case, the district judge said that Dosh had been able to examine the State's witnesses at the preliminary hearing and that this was "the best opportunity . . . because he did it on the record where they are obligated to tell the truth." The district judge also explicitly considered Dosh's considerable efforts to have Morris' competency to stand trial reviewed and ruled upon.

The district judge also rejected Morris' claim that he should have dismissed the case *sua sponte* because of the speedy trial violation, given Morris' waiver of the right. The judge also explained that he was under no duty to determine the merits of Morris' motion to suppress before accepting his pleas. Finally, the district judge rebuffed Morris' argument that he did not understand the meaning or consequences of a no contest plea:

"[T]he argument that a no contest plea requires abstract thought, I don't see that. It's relatively simple. You were told by the Court on several occasions, and the Plea Hearing transcript reflects this, that you were told by the Court on several occasions that by pleading no contest you are going to be found guilty. A no contest plea is just an admission to the Court that you are not going to fight the charges, and you're going to be found guilty. You were told that on several occasions in the Plea Hearing transcript. You also admitted that today, basically, in your testimony, today, sir.

. . . .

"You admit understanding today, you admitted understanding that you would be found guilty and you could be sentenced to prison as a consequence of your no contest pleas. You admit that Mr. Dosh told you that you could be looking at a life sentence. You also indicate that Mr. Dosh told you that the Court, the Judge is not required to follow the plea agreement, but yet you say you didn't understand that."

The district judge also read excerpts from the plea hearing transcript, in which he explained the nature and consequences of a no contest plea.

Given all of the above, the district judge ruled that Morris failed to show that manifest injustice would result if he was unable to withdraw his pleas, and he denied the motion. Morris appealed to this court.

Shortly before oral argument, Morris moved this court to take judicial notice of the fact that he is housed at Lansing Correctional Facility and not at Larned Correctional Mental Health Facility. The State did not respond to the motion. Although the subject matter of this motion may or may not be suitable for judicial notice, there appears to be no dispute between the parties on this point. We therefore deny the motion as moot.

## DISCUSSION

Our standard of review on denial of a postsentencing motion to withdraw plea is abuse of discretion. *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011). A defendant bears the burden to demonstrate such an abuse. 292 Kan. at 244.

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

To be successful in the district court on his motion, Morris had to demonstrate to the district judge that refusal to allow him to withdraw his pleas would result in manifest injustice. K.S.A. 2013 Supp. 22-3210(d)(2) ("To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.").

Kansas courts

"review at least three factors, commonly known as *Edgar* factors, after *State v. Edgar*, 281 Kan. 30, [127 P.3d 986 (2006),] when considering whether a defendant has demonstrated the requisite manifest injustice. These are: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36; see *State v. Green*, 283 Kan. 531, 545-46, 153 P.3d 1216 (2007) (applying the *Edgar* factors

to a postsentence plea withdrawal case); see also *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010) (collecting cases discussing the *Edgar* factors)." *Bricker*, 292 Kan. at 244-45.

The *Edgar* factors are " 'viable benchmarks for judicial discretion,' " but they are not the exclusive factors for this court to consider when reviewing the denial of a motion to withdraw plea. *Bricker*, 292 Kan. at 245 (quoting *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 [2010]).

Summarizing her case at oral argument, Morris' appellate counsel stated that she had a mentally handicapped client who pleaded no contest to two murders based on a promise no one in the courtroom could keep and with ineffective assistance and a viable Fifth Amendment issue unlitigated. But, specifically, Morris contends on this appeal that we should hold the district judge abused his discretion because: (1) the judge had failed to inquire explicitly at the plea hearing about promises made to Morris, which meant Morris was misled about the difference between a recommendation of security hospital placement and a guarantee of it; (2) Dosh provided ineffective assistance, particularly by failing to ensure resolution of the motion to suppress before Morris was pressured into entering his pleas; (3) Morris did not understand the meaning and consequences of a no contest plea; and (4) cumulative error tainted the denial of the motion.

*Promises*

With regard to promises, Morris contends that the district judge's failure to inquire misled him into entering his pleas "without understanding that the Larned recommendation was only that—a recommendation, not a hard-and-fast promise." The record before us does not support this assertion.

K.S.A. 22-3210(a)(3) requires that a district judge, before accepting a plea, determine that "the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." The transcript of Morris' plea hearing contains many passages in which the district judge asked Morris whether his pleas were voluntary, and Morris responded in the affirmative.

In addition, the only relevant promise in Morris' plea agreement recorded that the State would "concur with the defense's request that the Court *recommend* to the Secretary of Corrections that [Morris] be placed in a secure mental health facility to serve [his] sentence." (Emphasis added.) Dosh testified at the hearing on the motion to withdraw that he had explained the difference between a recommendation and a guarantee to his client. The written agreement itself stated that no promises not recorded in it had been made. Morris told the judge at his plea hearing and at the motion to withdraw hearing that he had understood the plea agreement's terms. At the plea hearing, he also told the judge he had no questions about those terms.

Morris' reliance on *Wilkinson v. State*, 40 Kan. App. 2d 741, 195 P.3d 278 (2008), *rev. denied* 289 Kan. 1286 (2009), is inapposite.

In *Wilkinson*, the defendant moved to withdraw his guilty plea to a second drug charge because he was ignorant of a statutory provision that, under the facts of his case, required a finding of manifest injustice before the sentencing judge could impose concurrent sentences. Even though this statute made the parties' agreement on a joint recommendation for concurrent sentences ineffectual, when Wilkinson moved to withdraw his plea after he was given consecutive sentences, the district judge denied the motion without holding an evidentiary hearing. The Court of Appeals panel reversed, holding that Wilkinson's decision to enter a plea could not have been an informed one if he was unaware of the "nearly insurmountable" statutory obstacle a concurrent sentencing recommendation would have to overcome. 40 Kan. App. 2d at 745. The panel remanded the case for an evidentiary hearing on whether Wilkinson's counsel had failed to inform him of the manifest-injustice standard. 40 Kan. App. 2d at 746.

This case is factually and procedurally distinct from *Wilkinson*. Here, the district court held an evidentiary hearing on Morris' motion to withdraw. At that hearing, Dosh testified that he explained the limited nature of the judge's recommendation, and Morris testified that he understood the terms of his plea agreement, including its recommendation language. The judge also had been careful to

use recommendation rather than guarantee language at the plea hearing.

Morris' appellate counsel sympathetically portrays her client's developmental disability and mental health issues, as is her charge. But these problems were well known to the district judge, who had presided over extensive litigation about Morris' competence to stand trial. Knowing what he did from that litigation, the judge engaged in a lengthy and thorough colloquy with Morris at the time the pleas were entered. And, at the hearing on the motion to withdraw, he heard Morris' testimony about his degree of appreciation of the choices facing him. The district judge ultimately concluded: "I think you understood the plea at the time, I think you understand now. I think you would have me believe otherwise, but I think you understood what you were doing at the time that you were entering these three pleas of no contest . . . ."

On this record, we see no abuse of discretion due to the judge's failure to inquire explicitly about promises at the plea hearing or to Morris' inability to understand the only relevant promise that had been made and its distinction from those that had not been made.

## Ineffective Assistance of Counsel

A defendant who claims ineffective assistance of counsel as a basis for a postsentencing plea withdrawal must

"meet constitutional standards to demonstrate manifest injustice. See also *State v. Muriithi*, 273 Kan. 952, 955-56, 46 P.3d 1145 (2002) (applying constitutional standard to a postsentence plea withdrawal motion alleging ineffective assistance of counsel). Consequently, [a defendant] must meet the commonly known *Strickland* test and show that (1) [counsel's] performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for [counsel's] errors, the result of the proceeding would have been different. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland* standards); *Muriithi*, 273 Kan. at 955-56. A " 'reasonable probability' " is a probability sufficient to undermine confidence in the outcome. *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004)." *Bricker*, 292 Kan. at 245-46.

When a defendant seeks to withdraw a plea, he or she must show that, but for counsel's unreasonably deficient performance, the de-

fendant would not have entered a plea but would have insisted on going to trial. 292 Kan. 239, Syl. ¶ 5.

Woven throughout Morris' ineffective assistance of counsel argument is the contention that he was "forced to choose between his Fifth Amendment rights and his Sixth Amendment rights." Morris argues that Dosh "wait[ed] until the last minute" to file the motion to suppress. This, Morris asserts, forced a dilemma: Try the case or take advantage of the State's plea offer.

In support of his argument, Morris relies on *Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968) (defendant's testimony at suppression hearing claiming ownership of suitcase inadmissible against defendant at trial on issue of guilt; contrary holding would impermissibly pit Fourth Amendment right to be free from unreasonable search, seizure against Fifth Amendment privilege against self-incrimination).

Morris' situation did not require him to surrender one constitutional right in order to assert another. He could have persisted in attempting to vindicate his Fifth Amendment right through the motion to suppress. His other option was to forego his chance for that vindication and plea bargain in exchange for a sentencing placement recommendation. "[A] defendant in a criminal action has no constitutional right to plea bargain." *State v. Jackson*, 223 Kan. 554, 558, 575 P.2d 536 (1978). Moreover, "[t]he very nature of [a plea] agreement is that the defendant waives statutory rights or constitutional rights in exchange for dismissal of other criminal charges or prosecutorial recommendations at sentencing" or both. *State v. Perry*, 39 Kan. App. 2d 700, 702, 183 P.3d 12, *rev. denied* 286 Kan. 1184 (2008).

The rest of Morris' ineffective assistance argument, as presented on appeal, turns on whether Dosh's delay in filing and pursuing a ruling on the motion to suppress fell below the objective standard of reasonableness.

At the motion to withdraw plea hearing, the district judge noted that the motion to suppress was filed after the motions deadline set in the case. Dosh testified that he had talked with the prosecutor in order to ensure there would be no issue with the lateness of the filing, and the district judge stated that the late filing would

not have prevented the motion from receiving a hearing before trial. Although an earlier filing of the motion may have facilitated its speedier decision, and knowing the outcome of the hearing could have been helpful to Morris in weighing his options, he was not prevented from factoring in his chances of success on the motion to suppress when he decided to sign the plea agreement. Dosh's performance on the motion to suppress certainly could have been better, but it did not fall below the constitutional standard.

Morris' ineffective assistance of counsel argument cannot support a holding that the district judge abused his discretion in denying the motion to withdraw.

### Understanding of a No Contest Plea

Appellate counsel argues, as appointed district court counsel did, that Morris cannot understand abstract concepts, and, as a result, he did not understand a no contest plea or its likely consequences. As with Morris' argument on promises, the record does not support counsel's assertion.

At the plea hearing, the district judge explained at length the charges against Morris, the nature of a no contest plea, and the guilty verdict consequence of such a plea. Morris said he understood the plea and its consequences. Dosh also explained the consequences of pleading no contest at the plea hearing. Morris again indicated he understood those consequences.

This argument also cannot support a holding that the district judge abused his discretion in denying the motion to withdraw.

### Cumulative Error

Finally, Morris invokes the cumulative error doctrine, typically applied when an appellate court examines a case for trial error. See *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009). Morris argues that the doctrine can support a reversal under our abuse of discretion standard if all of a defendant's arguments, taken together, persuade us that a district judge failed to recognize or improperly disregarded manifest injustice on a postsentencing plea withdrawal motion. The State argues that Morris failed to preserve a cumulative error argument for appeal.

We need address neither of these arguments. Even assuming that cumulative error may be applied in this situation because the existence of manifest injustice is determined with an eye to the totality of the circumstances, see *State v. Moses*, 280 Kan. 939, 950, 127 P.3d 330 (2006) (appellate court considers totality of circumstances when determining whether plea knowingly and voluntarily made); *State v. Smith*, 278 Kan. 45, 51-52, 92 P.3d 1096 (2004) (ineffective assistance of counsel based on totality of circumstances), and that Morris followed whatever procedure is necessary to preserve the issue for appellate review, we have detected no errors to consider cumulatively. See *State v. Lowrance*, 298 Kan. 274, 298, 312 P.3d 328 (2013) (cumulative error doctrine inapplicable when no errors identified).

Morris is not entitled to reversal of the district judge's ruling on this basis.

## CONCLUSION

We affirm the district judge's determination that defendant Andrew H. Morris failed to demonstrate that manifest injustice compelled withdrawal of his pleas of no contest to two counts of felony murder and one count of aggravated arson. On the record of this case, the judge did not abuse his discretion in denying the motion.