NOT DESIGNATED FOR PUBLICATION

No. 116,301

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY R. PENDLETON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed October 20, 2017. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*James Crux*, legal intern, *Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.

PER CURIAM: On June 18, 2010, Jeffrey R. Pendleton pled guilty to possession of methamphetamine, fleeing and eluding police, and driving while under the influence. More than four years later, in July 2014, Pendleton sought to withdraw his plea. After a hearing, the district court found that there was no manifest injustice to Pendleton and denied his motion to withdraw the plea. Pendleton appeals this decision.

The facts in this case are contested. According to a police report and a police affidavit, on April 30, 2010, an officer attempted to stop Pendleton after the officer

1

observed Pendleton driving erratically. This led to a high-speed chase where Pendleton swerved around stop sticks, drove on the wrong side of the road, and then fled from officers on foot. Through the use of a K9, officers apprehended Pendleton who was found hiding in some bushes. Pendleton was bitten by the K9.

The police report provided that in the area where Pendleton was apprehended, officers found a metal container with prescription pills inside. Three of the pills were identified as Alprazolam, an antidepressant, and two pills were identified as Hydromorphone, a narcotic. A search of the truck Pendleton had been driving revealed several unused syringes, a spoon with residue, and a digital scale. A search of Pendleton revealed a syringe, a spoon with residue, and a large amount of cash. The residue on the spoon field-tested positive for methamphetamine. The report also stated that Pendleton had a "strong odor of an alcoholic beverage coming from his breath."

Pendleton was transported to the hospital. The police report stated that Pendleton was drifting in and out of consciousness and "uttered several bizarre statements showing that his mind was not processing anything that was going on." For example, he had "asked to be taken off of the refrigerator and off a motorcycle." The report further stated that his pupils were enlarged and unresponsive to light. Officers had to restrain Pendleton so the emergency room nurses could stitch his bite wounds. His blood was collected so it could be tested. It was determined that Pendleton had an outstanding felony warrant and a revoked driver's license.

The police report stated that after receiving medical care, Pendleton was taken to the police station. A strip search revealed a small clear baggie containing a clear crystal substance and a rolled-up dollar bill with powder inside. The clear crystal substance field-tested positive for methamphetamine which was later confirmed by the Johnson County Crime Lab. The white power did not test positive for a controlled substance.

In an amended complaint, Pendleton was charged with possession of methamphetamine; possession of Hydromorphone, a controlled substance; possession of Alprazolam; possession of drug paraphernalia; fleeing and eluding; driving while under the influence; and driving while suspended. Importantly, the driving while under the influence count specifically charged Pendleton with operating or attempting to operate a motor vehicle "while under the influence of a combination of alcohol and any drug or drugs to a degree that rendered him incapable of safely driving a vehicle."

On June 18, 2010, as part of a plea agreement, Pendleton pled guilty to the counts of possession of methamphetamine, fleeing and eluding, and driving under the influence. The remaining charges were dismissed. As part of the factual basis for the plea, the prosecutor stated that the baggie containing the clear crystal-like substance was tested by the lab and was found to be positive for methamphetamine. The State also claimed that Pendleton's blood was tested by the KBI and showed that Pendleton was above the legal limit to be operating a motor vehicle. However, neither testing report had been completed by the plea hearing.

A report from the lab testing items for controlled substances was not completed until June 22, 2010. This report showed that the baggie containing the clear crystal-like substance had tested positive for methamphetamine, but a spoon and the dollar bill containing white power had not tested positive for a controlled substance. The analysis on Pendleton's blood sample was not completed until June 28, 2010. This report indicated that Pendleton's blood/alcohol content (BAC) was only .05%.

Pendleton was subsequently sentenced on August 25, 2010. He received 12 months of probation with an underlying 22-month sentence for the possession of methamphetamine, a six-month sentence for fleeing and eluding, and a six-month sentence for the DUI all running concurrently.

In July 2014, the district court received a letter from Pendleton stating he had received evidence showing he was innocent in the 2010 case. He stated that in discovery of a federal case he had been indicted on he found lab reports from this case showing that his BAC was .05% and that "the substance in question" had not tested positive for a controlled substance. Pendleton alleged he had pled guilty because the State and his defense attorney showed him a document stating his BAC was .15% and "the substance in question" was methamphetamine.

On February 5, 2016, an evidentiary hearing was held on Pendleton's motion. Prior to this hearing, Pendleton's defense attorney, who was now practicing outside of Kansas, was contacted but said she did not remember anything from Pendleton's criminal case. The prosecutor who conducted Pendleton's plea hearing testified that he did not have any recollection of a document showing Pendleton had a BAC of .15%. The prosecutor further stated that he had not received any results at the time of the plea, and if any results had come back he would not have personally given the results to Pendleton. The prosecutor also testified that the factual basis for the plea came from an affidavit filed in the case. As to the substance found on Pendleton, the prosecutor stated that while he said the lab had found the substance had tested positive for drugs, this was a misstatement, and he meant to say it had field-tested positive for drugs.

Pendleton testified that on the day he was presented with the plea deal, he originally did not want to agree to the plea because he only had one beer that day and there were no drugs on the dollar bill seized from him. However, his defense attorney presented him with a document obtained from the prosecutor stating that his BAC was .15% and the substance in the dollar bill had tested positive for methamphetamine. Pendleton stated the officers did not find a baggie of methamphetamine on him and if that had been the only item that tested positive for drugs, he would have gone to trial. He then testified he would not have entered into the guilty plea if he would have known about the results of the lab reports.

4

Next, Pendleton testified he was not driving on the night he was arrested, but he was a passenger. While Pendleton admitted that he was strip searched upon arrest, he denied that the officers found anything on his person other than the dollar bill with a substance on it. Pendleton stated he was not aware of the version of DUI he was charged with and was not aware that he could be found guilty regardless of his BAC level. He admitted he had been previously convicted of burglary of a nondwelling. Finally, Pendleton stated he was informed his blood sugar levels were low while he was at the hospital on the night of the alleged incidents.

In its memorandum order, the district court noted that Pendleton was seeking to withdraw his plea because he would not have pled guilty if he had known his BAC levels were below the legal limit and the items had not been tested for controlled substances yet. The court then recited the facts and denied Pendleton's motion to withdraw the plea, stating: "This Court believes [Pendleton] was represented by competent counsel, [he] was not misled, or coerced or in any way taken advantage of and [he] knew he was getting a very favorable plea deal. Nothing in this case is 'obviously unfair or shocking to the conscience' of this Court."

Pendleton appeals.

Pendleton argues on appeal that the district court abused its discretion when it denied his motion to withdraw his plea. Specifically, Pendleton contends the district court erred in not finding manifest injustice when he made a plea based on false information given to him and since the plea he discovered lab reports showing his BAC was .05% while the factual basis of the plea provided that his BAC was above the legal limit. Before we consider the merits of Pendleton's claims, we must determine whether Pendleton has filed his motion in a timely manner.

*Statute of Limitations*

K.S.A. 2016 Supp. 22-3210(d)(2) provides that a district court may set aside the judgment of conviction and permit the defendant to withdraw the plea after sentencing upon a showing of manifest injustice. Any action under K.S.A. 2016 Supp. 22-3210(d)(2)

> "must be brought within one year of: (A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States supreme court or issuance of such court's final order following the granting of such petition." K.S.A. 2016 Supp. 22-3210(e)(1).

However, this one-year time limitation "may be extended by the court only upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 2016 Supp. 22-3210(e)(2).

Pendleton filed his motion to withdraw his plea well beyond the one-year deadline in K.S.A. 2016 Supp. 22-3210(e)(1). As such, this time limit can only be extended upon an affirmative showing of excusable neglect. K.S.A. 2016 Supp. 22-3210(e)(2). However, the State has not argued that Pendleton has either filed out of time or failed to show excusable neglect. This court has previously suggested that the time limits in K.S.A. 2016 Supp. 22-3210(e) may be jurisdictional. See *State v. Marshall*, No. 112,875, 2016 WL 197744, at *2-3 (Kan. App. 2016) (unpublished opinion). However, the issue of whether the time limits in K.S.A. 2016 Supp. 22-3210(e) are jurisdictional and not waivable by the State does not need to be addressed.

If there has not been an objection to inadequate findings of fact and conclusions of law giving the district court the opportunity to correct such inadequacies, then such omissions are not considered on appeal and "this court presumes that the trial court found

6

all facts necessary to support its judgment." *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). In *McIntyre*, the Supreme Court held:

> "When a party files a motion under K.S.A. 60-1507 and the trial court addresses the substantive issue without the State objecting to the timeliness of the filing, it is presumed on appeal that the trial court found either that the motion was timely filed or that an exception based on manifest injustice applied." 305 Kan. 616, Syl. ¶ 2.

The reasoning in *McIntyre* applies here. Since the district court addressed the substantive issue of whether there was a manifest injustice requiring a withdrawal of a plea, it is presumed on appeal that the court found that there was an exception to filing within a year based on excusable neglect. Furthermore, the record supports this presumption of excusable neglect. Pendleton testified that he did not become aware of the evidentiary basis to withdraw his plea until 2014, the year he filed suit, after obtaining the lab reports during discovery in another criminal trial. Therefore, we presume there was an affirmative showing of excusable neglect by Pendleton allowing him to file beyond the one-year limitation.

*Abuse of Discretion*

Turning to the merits of the case, Pendleton argues that the district court abused its discretion by denying his motion to withdraw his plea. Specifically, he argues the court abused its discretion by not finding manifest injustice because: (1) he was misled about the nature of the evidence against him which resulted in his agreeing to the plea; (2) the discovered lab reports were new evidence that had he known about at the time of the plea he would not have agreed to the plea; and (3) he has presented a plausible claim of factual innocence.

7

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2016 Supp. 22-3210(d)(2). Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Davisson*, 303 Kan. 1062, 1064-65, 370 P.3d 423 (2016). Pendleton bears the burden to demonstrate such an abuse. *State v. Morris*, 298 Kan. 1091, 1100, 319 P.3d 539 (2014).

> "Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

"Appellate courts do not reweigh the evidence or assess witness credibility." *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). "Instead, appellate courts give deference to the trial court's findings of fact." 291 Kan. at 855.

In considering whether a defendant has demonstrated manifest injustice, the court looks to three factors:  "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011). However, these factors are nonexclusive when reviewing the denial of a motion to withdraw a plea. 292 Kan. at 245.

First, Pendleton argues the district court abused its discretion in finding no manifest injustice because he was misled as to the nature of the evidence against him and, as a result, his plea was not understandingly or fairly made. Specifically, Pendleton argues that he was misled because he was shown false documents showing that his BAC was above the legal limit and the dollar bill had tested positive for methamphetamine and

8

relied on that false information in deciding to take the plea offer. Pendleton further argues that if it was not for the State misleading him, he would not have taken the plea and would have taken the case to trial.

The district court made factual findings that Pendleton was not misled or taken advantage of and he knew he was getting a "very favorable plea deal." These factual findings are reviewed to determine whether there is substantial competent evidence to support those findings. *Anderson*, 291 Kan. at 855.

Pendleton was unable to provide any physical evidence or point to the record showing that he was given false documents or otherwise informed of false test results before he decided to take the plea. Since there was no record or physical evidence of Pendleton being given the reports, the determination of whether the false documents were ever given to Pendleton was a creditability determination for the district court. See 291 Kan. at 856-57 (finding that whether a defendant was misled in making a plea deal because of a conversation with his attorney was a credibility determination for the district court because there was no record of the conversation).

Moreover, there was conflicting testimony at the plea withdrawal hearing about whether the State produced documents showing false lab results. Pendleton testified that he was shown documents which stated that his BAC was .15% and residue on the one dollar bill tested positive for methamphetamine. However, the prosecutor testified that he did not have any knowledge of any document which said that Pendleton's BAC was .15%. The prosecutor further testified that if such a document existed, it would have been produced through discovery and he would not have personally given it to Pendleton. Resolution of which version of the facts is true turns on a credibility determination. The district court was well within its discretion to credit the prosecutor's testimony and determine there were no false lab reports that misled Pendleton or otherwise made it unfair for him to plead guilty.

9

Next, Pendleton argues that the discovered lab reports are new evidence which if he had known about at the time of the plea he would not have taken the plea and therefore a finding of manifest injustice is required.

Newly discovered evidence may support withdrawal of a plea.

"It is obvious that, if new evidence disproves an element of a crime, then the factual basis for a guilty or nolo contendere plea to the charge of committing that crime is undermined. It is a defendant's burden to prove that the factual basis of a plea is so undercut by new evidence that the prosecution could not have proved its case beyond a reasonable doubt. In such a situation, the court may permit withdrawal of the plea and may set aside the resulting conviction, because doing so corrects manifest injustice under K.S.A. 22-3210(d) and comports with due process." *State v. Green*, 283 Kan. 531, 547, 153 P.3d 1216 (2007).

The new evidence here is the reports stating that Pendleton's BAC was .05% and the dollar bill not testing positive for a controlled substance. However, the report that said the dollar bill did not test positive for a controlled substance also confirmed that a bag taken from Pendleton tested positive for methamphetamine. Moreover, the .05% BAC does not disprove an element of Pendleton's DUI charge. This is because Pendleton was not charged with operating or attempting to operate a vehicle with a BAC of .08% or more. Rather, he was charged with unlawfully operating or attempting to operate any vehicle under the influence of a combination of alcohol and any drug or drugs to a degree that renders the person incapable of safely driving a vehicle.

The State had an abundance of evidence suggesting that Pendleton was under the influence of a combination of alcohol and any drug or drugs to a degree that rendered him incapable of safely driving a vehicle. An affidavit and the State established that officers saw Pendleton driving a vehicle erratically, he refused to stop for officers, he swerved

10

around stop sticks, and he drove on the wrong side of the road. There was evidence that officers located a syringe, a spoon, and residue on Pendleton's person. The residue on the spoon field-tested positive for methamphetamine, but it later tested negative for a controlled substance. There was evidence that officers found Pendleton possessed prescription medications and a clear crystal substance, later confirmed to be methamphetamine. Pendleton was talking incoherently and drifting in and out of consciousness.

Pendleton attempts to discount the State's evidence by contending the State did not show that he was under the influence of any drug or was not experiencing a medical emergency due to his low blood sugar. Therefore, Pendleton argues, the State would be left prosecuting the case on simple possession and a legal BAC. Although the report of the .05% BAC would make it more likely that a factfinder would find Pendleton not guilty, it does not show "that the prosecution could not have proved its case beyond a reasonable doubt." See *Green*, 283 Kan. at 547. Rather, Pendleton's newly acquired evidence suggests that a jury could go either way on whether the State could prove beyond a reasonable doubt that Pendleton was guilty of driving under the influence. That there is uncertainty of whether a jury would convict Pendleton does not amount to manifest injustice when a plea deal necessarily takes into account such probabilities.

> "Entry of a plea of guilty or nolo contendere necessarily implies acknowledgment by all concerned—the defendant, the State, and the court—that a jury could go either way and . . . [i]nstead of leaving it up to a jury to acquit or convict, to recognize or fail to see any reasonable doubt that may exist, they cut a deal." *Green*, 283 Kan. at 547.

Because the discovered lab reports evidence does not disprove the State's case and there was otherwise substantial evidence of Pendleton's guilt, this newly acquired evidence does not establish manifest injustice.

Finally, Pendleton argues it would amount to manifest injustice to not withdraw the plea because he is advancing a claim of actual innocence. In *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), the Kansas Supreme Court found that when determining whether there is manifest injustice to extend the one-year time limitation to bring a K.S.A. 60-1507 action, one factor to consider is whether "the movant sets forth a colorable claim of actual innocence, i.e., factual, not legal, innocence." However, there is no evidence that the district court did not consider Pendleton's claims of actual innocence before denying his motion. "The mere fact that the district judge did not elaborate on [the defendant's] claim of innocence on the record is not evidence that it was not considered before ruling." *State v. Salcido*, No. 111,837, 2015 WL 2414418, at *3 (Kan. App. 2015) (unpublished opinions).

Rather, the district court was presented with an abundance of testimony from Pendleton maintaining that he was innocent. For example, Pendleton testified that on the night he was arrested the officers did not find any methamphetamine on him, he only had one beer that night, and he was not driving but was actually a passenger in that truck that night. Also, Pendleton argues his erratic behavior was caused by dangerously low blood sugar, which was discovered when he went to the hospital. This evidence was presented to the court, and the court did not abuse its discretion in finding that the claims of factual innocence did not amount to manifest injustice. As discussed above, even with the lab results showing Pendleton's BAC was below the legal limit and the dollar bill testing negative for controlled substances, the State had substantial evidence that Pendleton was guilty of all the crimes charged.

The district court did not abuse its discretion in finding there was no manifest injustice to withdraw Pendleton's plea. The court was within its discretion to credit the prosecutor's testimony and find that Pendleton was not misled while making the plea deal. The court also did not abuse its discretion in finding that the newly acquired

12

evidence and claims of factual innocence did not require a withdrawal of Pendleton's plea. Therefore, the judgment of the district court is affirmed.

Affirmed.