NOT DESIGNATED FOR PUBLICATION

No. 117,230

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZACHARY BERGMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed March 9, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: Zachary Bergman pled guilty to one count of aggravated assault. Before sentencing, he moved to withdraw his plea. After an evidentiary hearing, the district court denied Bergman's motion. On appeal, Bergman argues that the district court abused its discretion by finding no good cause existed to withdraw his plea. For the reasons stated below, we reject this argument. Accordingly, we affirm.

1

Bergman was charged with one count of aggravated assault on September 30, 2016. After a motion to reduce bond was filed, the State contacted Elizabeth Bernhart, Bergman's defense counsel, with a plea offer. Bergman's preliminary hearing was scheduled on the same day that the plea offer was made. Bernhart discussed the plea agreement with Bergman while another proceeding was going on in the courtroom. Bernhart was aware that Bergman had ADHD before her decision to discuss the plea agreement in this setting.

During their initial meeting, Bergman told Bernhart that "he was interested in a plea for probation." The plea deal on the table included a promise from the State to join in Bergman's request for a dispositional departure for probation rather than the presumed prison term. In exchange, Bergman would plead guilty and comply with all conditions stated in the agreement. Specifically, Bergman was prohibited from having contact with witnesses and victims, was required to obtain a mental health evaluation, and was required to begin anger management treatment. One of the State's witnesses, whom Bergman could not contact, was his wife and mother of his children. In accordance with K.S.A. 2016 Supp. 22-4901 et seq., Bergman was also required to register as a violent offender for 15 years. It is disputed as to whether he was aware of the registration requirement before sentencing. The district court did not mention Bergman's duty to register until after his guilty plea had been accepted but before the conclusion of the plea hearing. Bergman agreed to the terms of the plea agreement. He signed both the printed plea agreement as well as a notice of duty to register.

Before sentencing, Bergman violated three of the pretrial conditions. He failed a urinanalysis test, failed to obtain a mental health evaluation, and failed to enroll in a Batterer's Intervention Program. Consequently, his bond was revoked. Bergman retained new counsel and moved to reinstate bond. At the bond hearing, the district court reinstated bond and also lifted the no-contact order with Bergman's wife, per Bergman's request. Since the plea agreement included a no-contact condition, the State sought to

have a finding made that it was no longer bound by the terms of the plea agreement. Soon after, Bergman moved to withdraw his guilty plea. An evidentiary hearing was held to address the motion to withdraw.

In his motion to withdraw his plea, Bergman argued that good cause existed because before entering his plea, he

> "did not understand the meaning of a preliminary hearing or a jury trial; he did not understand that the sentencing range of 11-34 months was in the context of criminal history and how that applied to his case and his circumstances; he was not shown a copy of the police reports nor did he discuss his possible defenses with his lawyer; he did not receive his plea offer in writing until the morning of court, and did not have the opportunity to have it fully explained to him prior to entering his plea; and he was not informed that he would have to register as a violent offender for 15 years as a result of the plea of guilty."

At the evidentiary hearing, testimony was heard from Bernhart and Bergman to address these issues. Bernhart testified that she met with Bergman once in jail and then once again at the preliminary hearing. She testified that when she spoke with Bergman in the jail, he told her he wanted to seek a plea for probation. She explained to him what a preliminary hearing was and what a jury trial was. Bernhart testified that she was not certain she specifically addressed the issue with Bergman but generally explains to defendants what the burden of proof was at each stage of the potential proceedings. She asked him about his personal and criminal history, discussed his version of the facts, and told him she would move to modify bond. She also went over sentencing and showed him the sentencing grid. She did not give Bergman a copy of the police reports but summarized the content of those for him.

Bernhart acknowledged that Bergman did not receive the plea agreement until the same morning when he entered his plea because this was when she received the offer.

3

She testified that she first discussed the agreement with him, without a written copy. Then, once the paper work was completed and delivered to her, she discussed it with him by going through it word for word. She told Bergman "he could not have contact with the State's witnesses and that those were the people that were listed in the affidavit." Three people were listed in the State's affidavit of probable cause. One of them was Bergman's wife and mother of his children. Bernhart also testified that she explained to Bergman that he would have to register as a violent offender for 15 years.

Bergman's account of the events differed in several important ways. He claimed that he was never shown the sentencing grid, nor understood what his potential sentence would be. He claimed that Bernhart whispered too quietly to be heard when discussing the plea agreement with him. Bergman also testified that Bernhart went over only the "gist" of the agreement and did not get into specifics. He testified that he was not told until after he had entered his plea that he would have to register as a violent offender. He also testified that he did not know he would be unable to contact his wife.

The court found that Bernhart's testimony should be relied on more heavily than Bergman's testimony. The court found that

> "whether [Bergman] understood each and every word of what was going on that day or he was distracted or his attention span was short, whatever, Ms. Bernhart accomplished for him the very thing he said in the first meeting. I don't want to go to prison. I want probation. She had that offer on the table."

The district court went on to find that Bergman "entered a plea knowingly, intelligently, and . . . [the court] advised him of all the rights." The district court then denied the motion for lack of good cause shown.

Ultimately, the State did not join in Bergman's departure motion due to his failure to abide by the terms of the plea agreement. Nevertheless, the court sentenced Bergman to two years' probation rather than the presumed prison term, just as Bergman requested.

*Did the District Court Err by Denying Bergman's Motion to Withdraw Plea?*

"K.S.A. 22-3210(a)(3) requires that a district judge, before accepting a plea, determine that 'the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.'" *State v. Morris*, 298 Kan. 1091, 1101, 319 P.3d 539 (2014). Under K.S.A. 2016 Supp. 22-3210(d)(1), "[a] plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." To establish that a district court erred by denying a presentencing motion to withdraw pleas, a defendant must establish that the district court abused its discretion. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). A court abuses its discretion if its decision was based on an error of law, based on an error of fact, or was otherwise unreasonable. 305 Kan. at 449.

Our Supreme Court has consistently held that when considering whether to grant a motion to withdraw a guilty or no contest plea, Kansas courts should "review at least three factors, commonly known as *Edgar* factors." *Morris*, 298 Kan. at 1100. These three factors are "whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.' [Citations omitted.]." *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The *Edgar* factors are "'viable benchmarks for judicial discretion,' but they are not the exclusive factors for this court to consider when reviewing the denial of a motion to withdraw plea." *Morris*, 298 Kan. at 1101 (quoting *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 [2010]).

5

Bergman argues under the third *Edgar* factor—that his plea was not fairly and understandingly made. First, he argues that trial counsel did not adequately discuss the details of the plea agreement. Second, he argues that the district court failed to review the registration requirement before the acceptance of his plea.

The record shows that Bergman was represented by competent trial counsel who made him sufficiently aware of the nature of the charge and consequences of his plea. Bernhart explained the proceedings and potential consequences to Bergman. She anticipated potential issues with the facts of Bergman's case and was ready for more charges to be filed against him. She rejected a plea offer to plea as charged and, instead, sought a plea for probation because that was what Bergman requested. The district court specifically found that "Bernhart accomplished for [Bergman] the very thing he said in the first meeting. I don't want to go to prison. I want probation." The district court commended Bernhart's representation of Bergman and relied more heavily on her account of the events because of her detailed notes of Bergman's case and meticulous representation. The record does not reflect that Bernhart was ineffective or failed to properly advise Bergman of his charge or consequences of his plea.

When taken as a whole, the undisputed facts show that Bergman knew the conditions of his plea and was likely advised of all potential consequences. Though the setting in which Bergman was given an explanation of the plea agreement was arguably not ideal for Bergman, he did not request another setting nor did he ask Bernhart to repeat herself or further explain anything. Also, the district court specifically asked Bergman, "Are you pleading guilty because you are in fact guilty of this offense, or are you pleading guilty because you will do whatever it takes for me to sign this bond form?" To which Bergman replied, "Guilty." Ultimately, the record does not reflect a sense of misunderstanding or obvious unfairness.

Bergman argues that notice of duty to register as a violent offender must be provided before the acceptance of a guilty plea. In this case, the district court accepted Bergman's plea before addressing the notice of duty to register as a violent offender. Directly after accepting Bergman's plea, the district court asked Bergman if he had previously read and signed the notice of duty to register, to which Bergman testified that he had. This indicates that Bergman signed the notice before entering his plea. Regardless of this information, Bernhart testified that she had informed Bergman of his duty to register for 15 years before he entered his plea. Furthermore, even if this is not true, "due process does not require that the defendant be notified of collateral consequences arising from entering a plea." *State v. Barahona*, 35 Kan. App. 2d 605, 612, 132 P.3d 959 (2006). For the same reason, whether Bergman was advised of his duty to register by the district court is also irrelevant.

Under K.S.A 2016 Supp. 22-3210(a)(2), a guilty plea may be accepted in a felony case when "the court has informed the defendant of the consequences of the plea." Collateral consequences are not included in the mandates of the statute. *Cox v. State*, 16 Kan. App. 2d 128, 130-31, 819 P.2d 1241 (1991). The district court is not required to inform a defendant of the collateral consequences of a plea. *Bussell v. State*, 25 Kan. App. 2d 424, 426-27, 963 P.2d 1250 (1998). The test for whether a consequence is direct or collateral was adopted by this court in *City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 248, 822 P.2d 72 (1991), quoting *United States v. Lott*, 630 F. Supp. 611 (E.D. Va.), *aff'd* 795 F.2d 82 (4th Cir. 1986). The test is "'whether the consequences imposed are a definite, immediate, and largely automatic result of the guilty plea.'" *Lester*, 16 Kan. App. 2d at 248.

Bergman relies on *State v. Moody*, 282 Kan. 181, 144 P.3d 612 (2006), in making his argument that registration duties are actually direct consequences, as opposed to this court's decision in *State v. Legg*, 28 Kan. App. 2d 203, 13 P.3d 355 (2000). In *Moody*, our Supreme Court decided that a one-year postrelease supervision period was a direct

7

consequence and, therefore, requires notice be given. 282 Kan. at 195-96. In *Legg*, this court found that mandatory registration requirements are not penal in nature, nor are they a direct consequence to a plea. 28 Kan. App. 2d at 207.

Bergman argues that *Legg* is no longer controlling. He argues that the test for whether a consequence is collateral was set out in *Moody* after the holding in *Legg*. The test, however, has been applied in Kansas courts long before *Legg* was decided. See *Lester*, 16 Kan. App. 2d at 248. The holding in *Legg* is still the applicable standard. Since the district court had no duty to notify Bergman of his duty to register, his second argument also fails.

To conclude, the district court did not abuse its discretion in finding that Bergman presented the court with no good cause shown to withdraw his plea. The record shows that Bergman's plea was fairly and understandingly made. As a result, Bergman's argument fails.

Affirmed.