NOT DESIGNATED FOR PUBLICATION

No. 116,652

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HERMAN R. LANDERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed January 12, 2018. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

BUSER, J.:  On January 25, 2013, Herman R. Landers pled guilty to robbery, aggravated burglary, and criminal possession of a firearm. More than two years later, on July 16, 2015, Landers sought to withdraw his plea. After a hearing, the district court found no excusable neglect for Landers' untimely motion and no manifest injustice requiring the withdrawal of his plea and denied Landers' motion. Landers appeals this decision. He also argues, for the first time on appeal, that his sentence is illegal because a 2016 amendment to K.S.A. 21-6810 retroactively affected the criminal history score of his 2013 sentence. Finding no error, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2012, Landers was charged with aggravated robbery, aggravated burglary, and criminal possession of a firearm. Prior to trial, on January 25, 2013, Landers signed a written plea agreement providing that he would plead no contest to an amended count of robbery, aggravated burglary, and criminal possession of a firearm. The parties agreed to recommend concurrent sentencing and Landers stipulated to violating probation in a prior case.

The plea hearing was held on January 25, 2013, and Landers was represented by Jeffrey Dazey. Prior to accepting the plea, the district court conducted a lengthy and thorough colloquy, confirming that Landers understood his rights and the consequences of entering a no contest plea. Landers testified he understood the charges against him. Landers also agreed that he understood the terms of the plea agreement:

"THE COURT: Okay. Now, you signed the written plea agreement. Did you have an opportunity to read it before you signed it?
"THE DEFENDANT: Yes, sir.
"THE COURT: Do you have any difficulty reading?
"THE DEFENDANT: No, sir.
"THE COURT: Did you have an opportunity to ask your attorney any questions you had about the agreement?
"THE DEFENDANT: Yes.
"THE COURT: So when you signed it, can you assure me that you believe that you understood the plea agreement?
"THE DEFENDANT: Yes, sir."

The district court then reviewed the rights Landers would be waiving if he entered a no contest plea. Landers assured the district court that he understood his rights, he had discussed them with Dazey, and he would be waiving those rights by entering a plea. Next, Landers stated he understood his legal circumstances and that no one had forced

2

him to enter into the plea agreement. The district judge then observed, "I've asked you several questions now. I believe that you've understood the questions. You've answered in a way that leads me to believe so."

The district judge asked Landers if he was taking any prescription medicine. Landers responded that he was taking Prozac, Thiothixene, Benadryl, and Trazodone to treat his mental health conditions of paranoid schizophrenia, explosive disorder, and manic depression. Landers assured the district court, however, that he was feeling all right and he engaged in the following discussion:

> "THE COURT: Okay. You seem to me to be calm. You've looked me in the eye as you've answered questions. It appears to me you've understood. How would I know if you weren't understanding? What happens to you, what symptoms would you suffer?
> "THE DEFENDANT: I couldn't say.
> "THE COURT: Okay. You just wouldn't be alert or aware?
> "THE DEFENDANT: Yes, sir.
> "THE COURT: Okay. Are you with us today?
> "THE DEFENDANT: Yes, sir."

The prosecutor gave the factual basis for the plea which Landers heard and agreed could be presented against him. The district court found Landers was competent to enter a plea and understood the rights he was giving up by entering a plea. Landers then pled no contest to robbery, aggravated burglary, and criminal possession of a firearm as charged in the amended complaint.

After the plea hearing, on March 21, 2013, Landers was admitted to Larned State Hospital to receive a presentence mental health examination and report. Upon his admission, it was reported that Landers' "thought processes were 'logical and organized' and his thought content was 'normal.'" Moreover, Landers denied any "perceptual disturbances." He was diagnosed with bipolar I disorder with psychotic features, cannabis

3

dependence, alcohol dependence, and antisocial personality disorder. During Landers' final assessment, he was reported to be "alert and oriented in all spheres." On May 10, 2013, Landers was discharged from Larned.

Prior to sentencing, on May 20, 2013, the clerk of the district court received a letter from Landers requesting forms to "register with conflicts office" and a motion for change of counsel because his attorney allegedly: (1) engaged in unethical conduct; (2) was ineffective; and (3) breached the attorney client privilege. This letter was not presented to the district court prior to sentencing.

A presentence investigation (PSI) report indicated that Landers' criminal history score was A based on three prior person felonies. Importantly, the criminal history score of A was contingent on a juvenile adjudication of burglary, one of the three person felonies used to calculate Landers' criminal history score. Without the juvenile conviction of burglary in Landers' criminal history, his score would have been B. See K.S.A. 2011 Supp. 21-6804(a). Landers did not dispute his criminal history score of A as found in the PSI.

Sentencing was held on May 31, 2013. Prior to being sentenced, Landers stated, "I feel I'm innocent of this crime and I shouldn't be charged with it, but I don't want to go to trial and get more than what I'm having right now. And I guess that I have to do my ten years if that's what's given to me." The district court found Landers' criminal history score to be A and, accordingly, sentenced him to 130 months in prison.

Two years later, on July 16, 2015, Landers filed a pro se motion to withdraw his plea pursuant to K.S.A. 22-3210. In his motion, Landers argued (1) his sentence was illegal pursuant to *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013) (unpublished opinion); and (2) but for the ineffective assistance of his counsel, there was

4

a reasonable probability he would not have pled guilty and he would have insisted on going to trial.

On November 5, 2015, newly appointed counsel for Landers filed a modified motion to withdraw Landers' plea. In that motion, Landers argued that Dazey, his prior attorney, should have obtained a competency evaluation before the plea hearing to insure that Landers' mental health was such that he had the ability to understandably make a plea. Landers also argued there was excusable neglect for his untimely filing of the motion due to his lack of understanding district court procedures, his mental health issues, and his incarceration.

On May 27, 2016, the district court held an evidentiary hearing on Landers' motion to withdraw plea. The same district court judge who accepted the guilty plea, Richard D. Anderson, presided over the hearing. At the hearing, Landers' position was that he did not understand his right to trial or whether he had any option to go to trial. Moreover, Landers argued that "based on his mental state at the time, he couldn't really understand what was going on in the procedure and he had just kind of given up."

During the evidentiary hearing, Landers testified that he did not understand the plea agreement or the rights he was waiving. Landers stated that at the time of the plea hearing, he "wasn't thinking with a clear mind" and was only saying "yes, sir" indicating he understood his rights and the plea because Dazey told him to respond in that manner. Landers suggested that at the time of the plea, he was thinking about his children and how he would not be there for them. Additionally, Landers was concerned about his mother's illness.

Landers said that he was not listening to the judge's questions carefully and, "I did not understand the plea. When I took the plea, I was not here that day. I just was saying 'yes, sir.' I was mentally not here that day. I was on the street, thinking about things that

needed to be taken care of." However, Landers acknowledged that when he responded "yes" to the questions asked, he understood that he was going to be imprisoned for about 10 years. Landers also testified that he realized he was not in the right state of mind and did not understand the plea as soon as he was taken back to the county jail, immediately after the plea.

Although Landers said his mental health issues prevented him from understanding his plea, he stated, "I understood I was entering a plea, and I understood that it was ten years." Landers also agreed that he understood: (1) the nature of the plea agreement was to plead to a reduced charge; (2) the benefit to him would be that he would face much less time in prison than if he was convicted; and (3) he was accused of committing robbery with a firearm. Landers was present at the preliminary hearing and he understood that a witness identified him entering the victim's home with a pistol.

Landers testified he understood that he had a right to a trial, but he was advised not to go to trial. However, Landers stated that at the time of the plea he did not understand he had the right to call his own witnesses, the State had the burden to prove guilt beyond a reasonable doubt, he had the right to decide whether to testify on his own behalf, and his rights to appeal. Landers said Dazey went through his rights with him but Dazey did not explain Landers' rights to him.

Regarding Dazey's representation of Landers, Landers stated that Dazey was ineffective because he had Landers under "the impression that said that I couldn't go to trial because I have no witness" and he "didn't have no argument to fight for me." Landers further explained:

"As far as—I was in conference with Jeffrey Dazey, and he told me, he said, this is the things that they're going to say to you at court. So we went through that. He said, well, where is your alibi? And I said, I don't have one. All I have is someone to say he took me

6

from one side of town to another. He said, well, what about getting back from that side of town? There was no way of getting back from that side of town. So his—in his conversation, he told me that you have no legal something, that you can lean on, to get to go to trial. And I—I'm the one that keep saying, 'going to trial, I do not want to take a plea at all.'"

When asked about the untimeliness of his motion, Landers said he did not file the motion to withdraw his plea within one year because he "didn't have help" and did not understand the law. Landers further explained it took him two years to file his motion:

"Because I didn't know what I was doing and I was looking for someone else to help me. I wrote Jeffrey Dazey five letters, and I—four of those letters was asking him for help. Like I said, I asked him to file a fifteen-something, I don't know what it's called, but someone told me about it. So I asked in the letter to file that and he never got back with me. The fifth letter I told him I was going to file something, and that was by the time I had someone to help me with the notification of plea withdrawal."

Although Landers testified that he immediately knew he did not understand the plea, he did not write or file any motions while at Larned because he "just gave up." Landers noted that even though he only has a seventh grade education, he can read and write.

Dazey then testified on behalf of the State. Dazey acknowledged that he initially had concerns about Landers' mental illness. However, after talking with him, Dazey did not have any concerns about Landers' competency and noted that he appeared to understand what was going on. According to Dazey, Landers told him that he wanted to accept the plea deal because he was "very concerned about the potential prison sentence that he could face if he were convicted of the level 3 aggravated robbery charge, and then the other charges as well."

7

Dazey did not recall telling Landers to answer "yes" to all of the district court questions in the colloquy. He also denied telling Landers that he could not have a trial. However, Dazey agreed that Landers could have misunderstood him because Dazey had counseled that since the State's case was strong, Landers would likely be convicted at trial. According to Dazey, Landers appeared to be thinking clearly at the time of the plea and understood what was occurring.

Dazey testified that he spends considerable time with all of his clients discussing their rights and trial strategies. He was confident that Landers' rights were "certainly discussed prior to entering the plea" and Landers never gave Dazey any indication that Landers did not understand his rights. Dazey stated that Landers sent him a letter between the plea and sentencing hearings asking about withdrawing the plea. After Dazey explained the consequences of withdrawing the plea, however, Landers told him that he did not want to pursue withdrawing the plea.

Dazey reviewed the correspondence between Landers and him. He testified that Landers sent him a letter dated November 11, 2014, requesting documents from his case. Although the letter did not ask Dazey to file a motion on Landers' behalf, Dazey responded to Landers stating that since he was sentenced in May 2013, "more than one year has passed since the termination of the appellate jurisdiction, thus it may prove difficult for you to perfect a motion to withdraw your plea." Dazey did not recall Landers ever sending him a letter requesting that he file a motion to withdraw plea or file a K.S.A. 60-1507 motion.

On July 12, 2016, the district court denied Landers' motion to withdraw his plea. The district court's memorandum decision and order was 30 pages in length with extensive findings of fact and conclusions of law. In its memorandum decision and order, the district court made the following credibility determination:

8

"The Court credits the testimony of Dazey and the Defendant's statements to the Court at the time of the plea hearing. To the extent that the Defendant's testimony on 5/27/2016 was contradicted by his earlier statements at the plea hearing or the testimony of Dazey, the Court credits those previous statements and testimony above the Defendant's 5/27/2016 testimony."

The district court held Landers did not show excusable neglect for his untimely motion. Specifically, the district court noted Landers was aware of the basis for his motion immediately after entering the plea, his letters to the clerk of the district court indicated he was aware of the process to withdraw his plea, and he did not show that his confinement prevented him from timely filing the motion. The district court further found that Landers' ignorance of the district court's procedures was not excusable neglect and:

"There is no convincing evidence that the Defendant instructed Dazey or any other person to file a timely Motion to withdraw the plea. There is no evidence that the Defendant encountered an unexpected or unavoidable hindrance or accident which prevented him from filing the motion on time.

" . . . Other than ignorance of the law, the Defendant presents no convincing explanation for why [the] motion was not filed within the proper time."

Additionally, the district court held that even if Landers was able to show excusable neglect, he failed to show manifest injustice to support withdrawal of the plea. The district court explicitly found that "[Landers'] claim that he did not understand his rights, including his right to a trial, are not credible." The district court supported this finding based on Landers' statement at sentencing indicating that he made a "rational choice erring in favor of the lesser sentence rather than risk the danger of trial." The district court also pointed to Dazey's testimony, the Larned evaluation, and Landers' testimony at the plea hearing suggesting that Landers had been informed of his rights and the nature of his case. Finally, the district court found that Landers failed to demonstrate

9

he was denied effective assistance of counsel warranting a finding of manifest injustice. As a result, the district court denied Landers' motion to withdraw his plea.

Landers appeals.

DENIAL OF MOTION TO WITHDRAW PLEA

On appeal, Landers first contends the district court erred by denying his motion to withdraw plea. Specifically, Landers argues the district court abused its discretion in finding that (1) Landers failed to show excusable neglect for his untimely motion; and (2) Landers failed to show manifest injustice. Based on these two arguments, Landers asks our court to reverse the district court's denial of his motion to withdraw plea.

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2016 Supp. 22-3210(d)(2). Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Davisson*, 303 Kan. 1062, 1064-65, 370 P.3d 423 (2016). Landers bears the burden to demonstrate such an abuse. See *State v. Morris*, 298 Kan. 1091, 1100, 319 P.3d 539 (2014).

> "Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. [Citation omitted.]" *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

"Appellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact." *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

10

*Excusable Neglect*

First, Landers argues the district court erred by finding that he did not establish excusable neglect. Landers asserts that his ignorance of the law, seventh grade education, and mental illnesses, taken together, established excusable neglect.

A motion to withdraw a plea after sentencing

"must be brought within one year of:  (A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States supreme court or issuance of such court's final order following the granting of such petition." K.S.A. 2016 Supp. 22-3210(e)(1).

This one-year limitation, however, "may be extended by the court only upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 2016 Supp. 22-3210(e)(2). The showing of excusable neglect must justify why the defendant waited until after the one-year deadline before filing his motion. See *State v. Edwards*, No. 115,612, 2017 WL 4081449, at *3 (Kan. App. 2017) (unpublished opinion). When a defendant fails to make an additional, affirmative showing of excusable neglect, an appellate court will find the motion untimely and procedurally barred. *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013). Of particular relevance to this appeal, ignorance of the law or rules does not establish excusable neglect. *Davisson*, 303 Kan. at 1070.

Landers concedes his motion was filed outside the one-year time limitation and he was, therefore, required to show excusable neglect. He attempts to avoid the holding of *Davisson*—that ignorance of the law is not excusable neglect—by arguing his seventh grade education and mental illnesses combined with his ignorance of the law demonstrates excusable neglect for his untimely plea withdrawal motion.

11

Quoting Black's Law Dictionary 1133 (9th ed. 2009), our court has previously defined excusable neglect as:

> "'A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the par[t]y's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.'" *State v. Romero*, No. 112,891, 2016 WL 463783, at *2 (Kan. App. 2016) (unpublished opinion), *rev. denied* 305 Kan. 1257 (2017).

Our court has previously found the effects of mental illness may provide the basis for excusable neglect. *State v. Woods*, No. 105,728, 2012 WL 2045353, at *3-4 (Kan. App. 2012) (unpublished opinion). In *Woods*, our court held a district court erred by refusing to hold an evidentiary hearing on the defendant's motion to withdraw his plea when the defendant asserted his motion was not timely filed because of his mental illness. The *Woods* court determined that the record and pleadings did not conclusively show the defendant's motion had no merit when the defendant alleged he filed late because a voice had instructed him to withdraw an earlier timely filed motion. As a result, our court found that a hearing was required because if the defendant's allegations were true, the district court could find the defendant's failure to file before the one-year deadline was due to excusable neglect caused by his mental illness. 2012 WL 2045353, at *3-4.

However, in this appeal, unlike in *Woods*, there was an evidentiary hearing on Landers' motion. As a result, our standard of review is not a de novo examination of whether the record conclusively shows that the defendant's allegations have no merit. Rather, our review is whether the district court abused its discretion in denying Landers' motion. See 2012 WL 2045353, at *2.

12

We are persuaded the record on appeal supports the district court's finding that there was no excusable neglect. Despite Landers' documented mental illness, he testified that he was immediately aware of his alleged inability to understand the consequences of his plea. Landers testified he did not file the motion within one year because he did not know what he was doing and he was looking for someone else to help him. However, ignorance of the law does not establish excusable neglect. *Davisson*, 303 Kan. at 1070. Although Landers has little formal education, he testified that he can read and write. Despite his lack of education and mental illness, Landers was capable of filing a pro se motion to withdraw his plea. Landers fails to explain, other than through ignorance of the law, why he was unable to file such a motion earlier. Unlike the defendant in *Woods*, Landers failed to show how his mental illness or lack of higher education justified why he waited until after the one-year deadline before filing his motion. As a result, we find the district court did not abuse its discretion in concluding there was no unexpected or unavoidable hindrance or accident supporting a finding of excusable neglect.

Similarly, the evidence supports the district court's finding that excusable neglect was not shown by Landers' reliance on the care and vigilance of his counsel. Although Landers claimed he asked Dazey to help him, Dazey testified that the letters Landers sent did not ask him to file a motion to withdraw his plea or other motion with the court. Moreover, the evidence showed that Dazey received a letter from Landers, which simply requested documents from his case, only after the one-year deadline had elapsed.

In summary, there was no "unexpected or unavoidable hindrance or accident," "reliance on the care and vigilance of the party's counsel," or reliance "on a promise made by the adverse party." Black's Law Dictionary 1133 (9th ed. 2009). It was Landers' duty to meet the statutory deadline and his failure to meet the statutory time limit was not because of some unexpected or unavoidable hindrance. As a result, the district court's finding that Landers failed to show excusable neglect for his untimely filing was not an

abuse of discretion. On this basis, the district court did not err in denying Landers' motion to withdraw plea.

*Manifest Injustice*

Although not required given our holding that Landers' motion was untimely with no excusable neglect shown, we will also review Landers' second basis for claiming the district court erred. Landers contends the district court abused its discretion by finding that he failed to establish the withdrawal of his plea was necessary to correct manifest injustice. To warrant the withdrawal of a plea after sentencing, the defendant must show that the withdrawal was necessary to correct manifest injustice. K.S.A. 2016 Supp. 22-3210(d)(2). To establish manifest injustice, the defendant must demonstrate facts showing that it would be obviously unfair or shocking to the conscience not to permit him to withdraw his plea. *State v. Oliver*, 39 Kan. App. 2d 1045, 1048, 186 P.3d 1220 (2008). Landers bears the burden to show that the district court abused its discretion by failing to find manifest injustice. See *Morris*, 298 Kan. at 1100.

In considering whether a defendant has demonstrated manifest injustice, the court looks to three factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. [Citations omitted.]" *State v. Bricker*, 292 Kan. 239, 244-45, 252 P.3d 118 (2011). However, these factors are nonexclusive when reviewing the denial of a motion to withdraw a plea. 292 Kan. at 245.

Landers does not contest the district court's finding that he failed to show ineffective assistance of counsel. Rather, Landers' sole argument on appeal is that the trial court abused its discretion when it discredited his testimony alleging he was "not thinking with a clear mind" when he entered his no contest plea. He asserts that "[n]o one was

14

more competent to testify about Mr. Landers' internal thought process than Mr. Landers himself."

Landers' argument is hampered by the limits of our appellate review. See *State v. Elnicki*, 279 Kan. 47, 69, 105 P.3d 1222 (2005) (an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact); *State v. Cisneros*, No. 110,959, 2015 WL 770192, at *9 (Kan. App. 2015) (unpublished decision) ("Our court will not question the trier of fact's credibility determinations on appeal."). Indeed, while Landers may have been the most competent to testify about his internal thought process, the district judge was the most competent to assess Landers' credibility. See *State v. Macias-Medina*, 293 Kan. 833, 839, 268 P.3d 1201 (2012) (When the same judge presides over the plea hearing and the plea withdrawal hearing, that judge is in "the best position to resolve conflicts in the testimony and make the determination [whether the defendant's] pleas were knowingly and intelligently made.").

The district court was presented with a plethora of evidence rebutting Landers' testimony that he was not thinking with a clear mind, including testimony from Landers at the plea hearing and testimony from Dazey. On this record, the district court did not abuse its discretion in finding that Landers' testimony lacked credibility when he stated that he was not thinking with a clear mind when he entered his no contest plea. We hold the district court did not err by denying Landers' motion to withdraw his plea on this alternative basis.

LANDERS' JUVENILE ADJUDICATION IS PROPERLY INCLUDED
IN HIS CRIMINAL HISTORY SCORE

Landers next contends his sentence is illegal because his 1996 juvenile adjudication for burglary of a dwelling should not be included in his criminal history score. He reasons that a 2016 statutory amendment to K.S.A. 21-6810 regarding the

15

decay of juvenile adjudications for the purposes of calculating criminal history applies retroactively to his 2012 crimes. Although Landers did not raise this issue before the district court, a challenge to a district court's criminal history calculation may be raised for the first time on appeal under K.S.A. 22-3504(1). *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

Whether a sentence is illegal is a question of law over which our court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Similarly, the interpretation of a statute is a question of law over which we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

This issue involves the decay of juvenile adjudications pursuant to K.S.A. 2016 Supp. 21-6810. A juvenile adjudication that decays does not count as a prior conviction in a defendant's criminal history. K.S.A. 2016 Supp. 21-6803(e); *State v. Smith*, 49 Kan. App. 2d 88, 90, 304 P.3d 359 (2013). The statute in effect when Landers committed his 2012 crimes provided that a prior juvenile adjudication for a crime which would have been a person felony if committed by an adult did not decay. K.S.A. 2011 Supp. 21-6810(d)(3)(B). However, in 2016 the Kansas Legislature amended K.S.A. 21-6810 to expand the scope of juvenile adjudications that decayed. L. 2016, ch. 97, § 1. The current version of the statute provides that a juvenile adjudication which would have been a nondrug severity level 5 through 10 felony, if committed by an adult, decays if the current crime is committed after the offender reaches the age of 25. K.S.A. 2016 Supp. 21-6810(d)(4)(B).

In this case, Landers' juvenile adjudication was for burglary of a dwelling, a crime which constituted a severity level 7 person felony if committed by an adult. K.S.A. 2011 Supp. 21-5807(c)(1)(A). Because his juvenile adjudication would have been a person felony if committed by an adult, Landers' juvenile adjudication did not decay under the version of K.S.A. 21-6810 in effect at the time he committed his current crimes. This is

16

because "the fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed. [Citations omitted.]" *State v. Overton*, 279 Kan. 547, 561, 112 P.3d 244 (2005).

Even though the 2016 amendments did not become effective until after Landers committed his crimes and was sentenced, he contends the current version of K.S.A. 21-6810 applies retroactively and renders his sentence illegal. Landers bases this argument on the language of K.S.A. 2016 Supp. 21-6810(e), which provides that the "amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively."

Our court has previously held that the 2016 amendments regarding the decay of juvenile adjudications under K.S.A. 21-6810 do not apply retroactively. See *State v. Anhorn*, No. 116,655, 2017 WL 4848183, at *2 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* November 20, 2017; *State v. Martinez*, No. 116,175, 2017 WL 3947378, at *11-12 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* October 5, 2017; *State v. Villa*, No. 115,595, 2017 WL 3207087, at *2-5 (Kan. App. 2017) (unpublished opinion), *rev. granted* 307 Kan. __ (December 20, 2017); *State v. Riley*, No. 116,046, 2017 WL 1426208, at *1 (Kan. App. 2017) (unpublished opinion); *Parker v. State*, No. 115,267, 2017 WL 947821, at *4 (Kan. App. 2017) (unpublished opinion), *rev. granted* 306 Kan. ___ (September 29, 2017). We find the reasoning in these cases persuasive and adopt their legal conclusion.

"[T]he crime and penalty in existence at the time of the offense are controlling unless the legislature has given retroactive effect to any statutory changes made subsequent to the time of the commission of the crime. [Citations omitted.]" *State v. Van Cleave*, 239 Kan. 117, 122, 716 P.2d 580 (1986). A statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate

17

retroactively; or (2) the change is procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties. See *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016).

Landers acknowledges the 2016 amendments to K.S.A. 21-6810 are substantive in nature and we agree with this legal proposition. Substantive laws define criminal acts and prescribe punishments. *Tonge v. Werholtz*, 279 Kan. 481, 487, 109 P.3d 1140 (2005). Procedural laws provide or regulate the steps by which a defendant is tried and punished. 279 Kan. at 487. The amendments here are substantive because they affect the length of a defendant's sentence. See *State v. Reese*, 300 Kan. 650, 653-54, 333 P.3d 149 (2014); *State v. Martin*, 270 Kan. 603, 608-09, 17 P.3d 344 (2001). Indeed, retroactive application of the 2016 amendments would affect the substantive rights of every defendant serving a sentence based in part on the classification of a juvenile adjudication that would be a lower-severity-level person felony if committed by an adult. See *Parker*, 2017 WL 947821, at *4 (noting the potential for a flood of illegal-sentence cases if the 2016 amendments apply retroactively). As a result, the 2016 amendments to K.S.A. 21-6810 can only be retroactive if the statutory language clearly indicates that the Legislature intended the statute to operate retroactively.

The retroactivity provision upon which Landers relies, K.S.A. 2016 Supp. 21-6810(e), was added in 2015 as part of House Bill 2053. L. 2015, ch. 5, § 1. House Bill 2053 amended K.S.A. 21-6810 to address classification of pre-1993 adult convictions and juvenile adjudications as a legislative response to *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). L. 2015, ch. 5, § 1. The subsection (e) retroactivity provision was added to clarify that the 2015 amendments were themselves retroactive: the "amendments made to this section *by this act* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) L. 2015, ch. 5, § 1. "The retroactivity provision was essential in House Bill 2053 due to the significant number of

postconviction challenges to criminal sentences the courts would face if no retroactivity provision clarified that the provision was procedural in nature." *Villa*, 2017 WL 3207087, at *3.

Although the retroactivity provision of subsection (e) was enacted one year prior to the 2016 amendments regarding the decay of juvenile adjudications, the Kansas Legislature did not amend subsection (e) when it enacted the 2016 amendments. Landers claims that because subsection (e) was not amended, the Legislature made a conscious decision to not limit K.S.A. 2016 Supp. 21-6810(e) to the 2015 amendments and expressed an intent for this retroactive provision to extend to the 2016 amendments. We disagree.

Landers' argument overlooks the plain language of the retroactivity provision made by the 2015 amendments: the amendments made "by this act" are to be applied retroactively. The "act" referenced here is House Bill 2053, which contained the 2015 amendments and was titled: "An act concerning crimes, punishment and criminal procedure; relating to calculation of criminal history; amending K.S.A. 2014 Supp. 21-6810 and 21-6811 and repealing the existing sections." L. 2015, ch. 5. "If the legislature had intended for subsection (e) to apply to all further amendments to the statute, it could have stated that intent; the legislature frequently applies a rule to a statute 'and amendments thereto.'" *Villa*, 2017 WL 3207087, at *4. In other words, the statutory language indicated that only the 2015 amendments are retroactive, not every later amendment to the statute.

It is true that the Legislature did not change subsection (e) in 2016 when it made additional amendments. However, we do not find the Legislature's lack of action related to subsection (e) as expressing its clear intent to make the 2016 amendments apply retroactively. See *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016) (noting that Legislative inaction is not a strong indicator of legislative intent). Moreover, the

19

legislature's most recent amendment, effective July 1, 2017, to subsection (e) confirms our interpretation that the phrase "by this act" limits the retroactivity provision to the 2015 amendments and was not meant to encompass the 2016 amendments. Effective July 1, 2017, subsection (e) now reads: "The amendments made to this section by *section 1 of chapter 5 of the 2015 Session Laws of Kansas* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) L. 2017, ch. 92, § 5.

As a result, we find no clear indication that the Legislature intended for the 2016 amendments to apply retroactively and, therefore, we agree with the other decisions of this court holding the 2016 amendments to K.S.A. 21-6810 do not apply retroactively. Landers' prior juvenile adjudication for burglary of a dwelling did not decay and it was correctly classified as a person felony in his criminal history for purposes of his 2012 crimes and sentence.

Affirmed.