NOT DESIGNATED FOR PUBLICATION

No. 123,880

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANE WILLIAM BRAMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed April 22, 2022. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Reina Probert*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., CLINE, J., and RACHEL L. PICKERING, District Judge assigned.

PER CURIAM: Shane Braman appeals the district court's denial of his postsentencing motion to withdraw his no contest plea to robbery. He asserts that his appointed counsel, Robert Myers, provided ineffective assistance of counsel by failing to investigate possible defenses to the charges, and failing to investigate whether mental illnesses prevented Braman from understanding the charges against him. He also argues he did not understand the plea agreement at the time of the plea hearing, and he was forced to take the plea. After an evidentiary hearing, the court found Braman failed to show the statutorily required manifest injustice. See K.S.A. 2020 Supp. 22-3210(d)(2). We affirm.

1

We hold that Braman has not met his burden to establish the district court abused its discretion. See *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019). Essentially Braman's arguments rely on his version of the conflicting evidence and he asks this court to reweigh the evidence in his favor and grant his plea withdrawal motion. Appellate courts, however, cannot reweigh the evidence presented or assess witness credibility. See *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). Braman's arguments are contradicted by the record, which establishes that Myers did not provide ineffective assistance of counsel. The record shows that Braman fully understood the plea agreement and Myers did not coerce Braman to enter the plea. The district court's decision is supported by substantial competent evidence that includes the plea agreement Braman executed, his plea colloquy, and the testimony received at the plea withdrawal hearing from both Braman and his trial counsel.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2017, the State charged Braman with one count of aggravated robbery, a severity level 3 felony. The aggravated robbery charge stemmed from when an employee for Papa John's Pizza was pepper sprayed and robbed while on a pizza delivery. That same employee later identified Braman from a photograph line-up as the person who robbed him.

Due to this charge, Braman was provided a court-appointed attorney, who moved to withdraw due to a conflict of interest. After granting the first attorney's withdraw motion, on February 2, 2017, the district court appointed Robert Myers to represent Braman. The following day, Myers filed four motions on Braman's behalf: a motion for continuance, a motion for production of evidence, a motion for criminal history, and a motion to reduce bond. The district court granted the motion for continuance and scheduled a status conference for March 22, 2017.

2

After learning that Braman wanted a global plea agreement to resolve his several open criminal cases, Myers and the State began plea negotiations. At the time, the State had not yet filed five other felony cases against Braman, including four felony thefts from Wal-Mart and a fifth felony charge of forgery. At the March 22, 2017 hearing, Myers moved to set another hearing, advising the court, "[W]e thought we had a resolution for a plea, that has fell apart and so we need to schedule a preliminary hearing." The district court scheduled a preliminary hearing for April 26, 2017.

*Braman's Plea Agreement*

On April 26, 2017, the State filed an amended complaint. The State charged Braman with one count of robbery, a severity level 5 felony. The original charge of aggravated robbery carried a prison term of 247 months for Braman, who had an A criminal history score. The four felony thefts each carried between 15-17 additional months' imprisonment, and the forgery charge carried between 19-23 additional months' imprisonment. Braman then signed a 10-page document, Petition to Enter a Plea Agreement. The document included Braman's agreement to enter a no contest plea to the lesser charge of robbery. In exchange for doing so, the State agreed to the following:  (1) not to file the five other cases against Braman; (2) recommend the mitigated number of 122 months' imprisonment; and (3) modify a sentence from a separate case to run concurrent with the sentence in this case. The plea agreement was a global resolution, resolving all of Braman's outstanding criminal cases, including the five uncharged criminal cases.

Later that same day, the district court held the plea hearing. The court, advised of the negotiated plea terms, placed Braman under oath. Under oath, Braman waived his right to a preliminary hearing after the district court explained the consequences of doing so. Braman then waived a formal reading of his complaint and pled no contest to robbery. After ensuring Braman understood the rights he waived by entering the plea, the district

court accepted Braman's no contest plea. At sentencing, the court followed the agreement and sentenced Braman to 122 months' imprisonment.

*Braman's Postsentencing Efforts to Withdraw His Plea*

After being sentenced, Braman filed several pro se motions to withdraw his plea. In April 2019, the district court appointed a different attorney to represent Braman on his claims. In January 2020, Braman's new attorney filed an amended motion to withdraw the plea. In the motion, Braman alleged that his trial counsel had: a conflict of interest, had failed to investigate possible defenses to the charges, had failed to investigate whether mental illnesses prevented Braman from understanding the charges against him, had not met with Braman while he was in jail, had not asked for a continuance on the day of the preliminary hearing after the State disclosed it had more evidence, had not adequately reviewed the plea agreement with Braman, and had not filed a motion to withdraw after the plea hearing.

In March 2021, the district court held an evidentiary hearing on Braman's motion to withdraw his plea. Both Braman and Myers testified.

*Braman's Testimony*

Braman began his testimony by stating that Myers had not adequately communicated with him during the case. Although Myers had written letters to him, Braman claimed that the letters only stated the court dates. Nor had Myers ever personally visited with Braman while he was in jail. Braman also criticized the time Myers spent discussing the plea agreement with him, stating that he only had "about five minutes" discussing the 10-page agreement with Myers before the April 2017 plea hearing.

Regarding investigating his case, Braman also testified that Myers had not adequately investigated possible defenses for his case. Braman claimed Myers failed to

4

contact a potential alibi witness. Braman also testified he was unable to see the DVD footage from a Casey's General Store. Previously, the DVD footage had served as the basis for Braman being identified by the Papa John's employee in a photograph line-up. Myers had advised Braman that the State now possessed the DVD footage. On the day of the plea hearing, Myers told Braman the State had the DVD footage, two new witnesses for the State, and a statement from one of Braman's jail inmates. Braman testified that while he had asked Myers to request a continuance to view the DVD footage, Myers told him that if the defense requested a continuance the State would rescind the favorable plea agreement.

Additionally, Braman testified that he suffered from mental illnesses, including bipolar disorder and manic depression, and that he had ADHD. He stated he informed Myers of his mental illnesses before taking the plea, but Myers told him his illnesses would not play a factor. On direct examination, Braman acknowledged that when the court took his plea, he advised the court that he did not have a mental illness. Additionally, he acknowledged that he told the district court he had a sufficient amount of time to review the plea agreement before agreeing to it, and that he was not forced to enter his plea of no contest. Braman explained that he answered the court's questions in this manner because he "was worried about the plea deal coming off the table." He also told the court that no one had forced him to take the plea. Despite those responses, Braman felt Myers had not competently represented him, and he testified he had asked Myers to withdraw as his appointed attorney following the plea hearing.

On cross-examination, Braman made many acknowledgements about Myers' representation. He admitted that Myers spoke with him on the phone while in jail and after speaking with Braman, Myers began negotiating a plea agreement with the State. He also admitted that Myers provided him with all the discovery that Myers had received from the State. He acknowledged that before the April 2017 plea hearing started, he had signed the 10-page petition to enter a plea. Further, at that hearing, he discussed the plea

5

agreement with the district court and understood the nature of the document that he signed. Braman also agreed that because the State amended the charge to a level 5 felony, his maximum prison sentence was reduced from 247 months to 136 months. The State, moreover, agreed to recommend the mitigated term of 122 months.

Braman also testified that the State agreed not to file five other felony charges against him. Four of those other charges stemmed from thefts at Wal-Mart, each of which would have carried between 15-17 additional months' imprisonment. The other charge would have been a felony forgery charge, which would have carried between 19-23 additional months' imprisonment. Braman's cross-examination ended with him acknowledging that the plea deal Myers had negotiated on his behalf had saved Braman over 10 years in the Department of Corrections.

*Myers' Testimony*

The State called Myers to testify. Myers testified about his nearly 23 years of law practice, which included a criminal defense practice that entire time. Previously, he had been appointed to handle various types of criminal defense cases and defended those charged with serious crimes involving potential life sentences. Myers said he started working on Braman's case the day after being appointed by filing various motions. As to the plea agreement, Myers said he contacted the State about it after speaking on the phone with Braman multiple times. Referencing his notes from those phone calls, Myers recalled that Braman would consider a plea agreement.

As to his communication with Braman, Myers testified that he spoke with Braman 27 times on the phone and wrote him 11 letters throughout the case. Myers also sent Braman the discovery information in February and March 2017, as the State continued to develop its case against Braman. The other information the State continued to gather related to the potential theft charges against Braman the State was considering filing.

Myers said he first sent a draft of the plea agreement to Braman on February 20, 2017. At the status conference on March 22, Myers met with Braman in person and believed Braman would enter a plea that day, but a resolution was not reached. Consequently, Myers asked the district court to schedule a preliminary hearing. Between that status conference and the hearing on April 26, Myers said he spoke with Braman on the phone five times from March 24 through April 10, and twice on April 25. Throughout those conversations, Myers said Braman actively participated in the plea negotiation process and told Myers what he wanted.

Myers recalled privately meeting with Braman on April 26, 2017, and reviewing the 10-page plea agreement for 30-40 minutes. Myers could not recall Braman ever telling him before April 26 that he did not wish to enter a plea. Had Braman ever expressed his hesitation, Myers said he would have asked the district court to stop the proceedings, similar to what happened at the March 22 hearing. Myers opined he fully investigated the case and did not coerce Braman into entering the plea. He did not think he should have continued the April 26 hearing, despite the other evidence the State had. He reasoned that the Casey's General Store video footage did not affect the case because the State chose not to charge Braman with forgery. Similarly, he did not feel the other reports provided any sort of exculpatory evidence for Braman. In general, Myers thought the plea benefited Braman because it greatly reduced his overall prison sentence, and the State agreed not to file additional cases.

In additional testimony, Myers recalled the first time Braman asked him to withdraw was at the sentencing hearing in May 2017. Myers said the two discussed it, but he did not move to withdraw from the case because he thought that he and Braman had communicated well. Nor did Myers recall Braman ever mentioning a potential alibi witness. Similarly, Myers did not recall Braman ever mentioning any sort of mental illnesses. Moreover, based on their many interactions, Myers did not believe Braman suffered from any mental illness. Instead, Myers described Braman as actively involved

7

with all aspects of the case, often engaging in the minutiae of the plea negotiations. For these reasons, Myers believed Braman to be fully competent when he entered his plea.

On cross-examination, Myers said he never met with Braman at jail. He said he began plea negotiations after talking with Braman about the number of months he would agree to do as part of a global resolution for all his cases. To Myers' recollection, Braman did not enter the plea agreement on March 22 because the State would not agree to an acceptable number of months in prison. Myers said Braman left a message with his office on March 27 about a motion to withdraw from the case. Myers did not recall specifically discussing the message with Braman, but he pointed to the several phone calls between the two of them in the preceding two weeks and said it would have been discussed. He also reiterated that he did not feel communication between himself and Braman had broken down to a point where he needed to file a motion to withdraw.

As to the plea agreement, Myers said he discussed it extensively with Braman and wanted to help Braman make an informed decision. To support his claim, he pointed to Braman's initials on page seven of the document where the number of cases the State agreed not to file had to be changed. Similarly, he pointed to the alteration of the date on page nine of the agreement. Myers also said Braman wished to enter a plea in February 2017, the same month the district court appointed him to the case. He also did not recall Braman ever asking him to continue the hearing in April 2017 after the State revealed it had other evidence. Nor did he recall Braman ever mentioning any mental illnesses, and in support, he pointed to the sections of the plea agreement about mental illnesses, which he would have reviewed with Braman.

*The District Court's Ruling on Braman's Plea Withdrawal Motion*

At the end of the hearing, the district court denied Braman's motion, stating to Braman, "Mr. Braman, I find your testimony today to be self-serving. You've had a lot of time to think about it. I don't find the testimony to be credible." The district court found

8

that Braman had not met his burden. Following the court's ruling from the bench, the court then submitted a written journal entry denying Braman's motion.

In the journal entry, the district court found that Braman failed to prove Myers had a conflict of interest. The district court also found that Braman requested that Myers enter plea negotiations shortly after being appointed to the case, which Myers did. The district court rejected Braman's contentions that Myers did not communicate often enough with Braman, finding that Myers called Braman 27 times and wrote him 11 letters. Similarly, the district court rejected Braman's claim that he told Myers about any mental illnesses, finding Braman fully competent. The district court also found the issue of the DVD footage from Casey's General Store not germane to the current case because the State never charged Braman with forgery for what happened at Casey's. And lastly, the district court found that Myers reviewed the plea agreement with Braman for 30-40 minutes.

Braman timely appeals.

ANALYSIS

Braman argues the district court erred by denying his plea withdrawal motion. Braman essentially asks this court to reweigh the evidence in his favor to grant his motion. This argument, however, fails as the district court's factual findings are supported by substantial competent evidence, and the court made credibility findings against Braman.

*Standard of review*

A district court's decision to deny a postsentencing motion to withdraw a plea is reviewed for an abuse of discretion. State v. Hutto, 313 Kan. 741, 745, 490 P.3d 43 (2021). Absent an abuse of discretion, appellate courts generally do not disturb a district court's denial of a postsentence motion to withdraw a plea. State v. Cott, 311 Kan. 498, 499, 464 P.3d 323 (2020). "A court abuses its discretion if its decision is arbitrary or

9

unreasonable, based on an error of law, or based on an error of fact." 311 Kan. at 499. Appellate courts give deference to the trial court's findings of fact. *Johnson*, 307 Kan. at 443.

*Discussion*

K.S.A. 2020 Supp. 22-3210(d)(2) sets out the standard for allowing a defendant to withdraw a plea after sentencing: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." Inherent in the manifest injustice requirement is that the context of the plea agreement "was obviously unfair or shocking to the conscience." *Hutto*, 313 Kan. at 745. When determining whether a movant has established manifest injustice, courts in this state generally consider the three *Edgar* factors: "'(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *State v. Morris*, 298 Kan. 1091, 1100, 319 P.3d 539 (2014) (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). Braman, as the movant, bears the burden to prove the district court abused its discretion in denying his motion. See *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019).

Essentially, Braman's argument mirrors the three *Edgar* factors, stating "the underlying fact[s] show that [Braman] was represented by incompetent counsel and coerced into taking a plea that he had insufficient time to review and understand." Braman's primary claim is that Myers provided ineffective assistance of counsel.

"'When a postsentence motion to withdraw a plea alleges ineffective assistance of counsel, the constitutional test for ineffective assistance must be met to establish manifest injustice.' That test asks: '(1) whether the attorney's performance fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different.' There is a 'strong presumption' that counsel provided '"adequate assistance"' and '"made

10

all significant decisions in the exercise of reasonable professional judgment."' Prejudice means 'a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea.' A reasonable probability is a '"probability sufficient to undermine confidence in the outcome."' [Citations omitted.]" *Johnson*, 307 Kan. at 447.

Braman contends Myers did not adequately discuss the plea agreement with him, did not adequately investigate the case to prepare potential defenses for trial, did not speak with an alibi witness, did not view the video footage from Casey's General Store, and did not investigate his mental illnesses.

Braman essentially is asking this court to reweigh the evidence presented at the evidentiary hearing and decide in his favor. But as stated above, appellate courts give deference to a district court's factual findings and do not reweigh the evidence or assess witness credibility. See *Johnson*, 307 Kan. at 443. And there is evidence in the record to support the district court's finding.

During the plea hearing in April 2017, Braman told the district court he signed the Petition to Enter Plea Agreement. After doing so, he told the district court he wished to voluntarily waive his right to a preliminary hearing. After being sworn under oath, Braman told the district court he had not recently been treated for any mental illnesses or addiction to drugs of any kind. After waiving formal reading of the amended complaint, Braman pled no contest to the amended charge of robbery.

After pleading no contest, the following exchange took place:

"THE COURT: All right. Before I can fully and finally accept your plea to that charge, are you satisfied with the representation of your attorney up to this point?

"THE DEFENDANT: Yes, I am.

"THE COURT: Have you had sufficient opportunity to discuss your case with your attorney?

"THE DEFENDANT: Yes, I have.

11

"THE COURT: Mr. Myers, do you believe you've had sufficient opportunity to investigate the case involving Mr. Braman?

"MR. MYERS: I do, Judge."

The district court then explained the rights Braman waived by pleading no contest, including the right against self-incrimination, the right to a trial by jury, the right to confront witnesses against him, the right to appeal should he be convicted, and the right to a presumption of innocence. After stating each of those rights, the district court asked Braman whether he understood them, and Braman told the district court he did. Next, in response to the district court's inquiry if any promises had been made to have him enter the plea, Braman said no.

After the State explained the factual basis for the plea, the district court stated:

"THE COURT: Okay. Mr. Braman, are you pleading no contest for any reason you've not yet disclosed to me?

"THE DEFENDANT: No.

"THE COURT: Mr. Myers, do you believe the plea is both knowledgeable and voluntary?

"MR. MYERS: Judge, it is. And if I may additionally make a comment in that regard, we were previously here back on March 22, it looks like. I understand that my client has signed that plea agreement today, and presented that to the Court, but the plea that is structured in there has been worked on well over a month and we previously had the plea agreement presented to him to review and there was a couple questions that got answered today, and so it is signed, so I do believe it is knowingly and freely given and signed today."

Following that exchange, the district court accepted Braman's no contest plea.

Before sentencing in May 2017, Braman filed a motion for a change of venue and a motion for new counsel. During the sentencing hearing, the district court asked Braman why he filed a motion for new counsel, and Braman explained that he had been incarcerated for over 139 days and Myers had not visited him in jail. Braman also said he had only spoken with Myers about five times on the phone during that time. Braman also

said Myers had not filed certain motions Braman asked him to file, though he did not mention any specific motions. After the district court pointed out that Braman filed these motions after pleading no contest, Braman interjected to say he filed them before pleading no contest. In response, the district court stated, "maybe you intended to but they were filed after but that makes even less sense that you filed them before and then went ahead and entered into a plea agreement." Braman then said the court system worked differently where he grew up. The district court denied Braman's motions.

During the evidentiary hearing in March 2021, Braman acknowledged his responses to the inquiries of the district court, particularly whether he understood the plea, had been satisfied with Myers' performance, and had reviewed the plea agreement with Myers. Braman also acknowledged that he understood the benefits of entering the no contest plea, including the mitigated sentence and the other five cases the State agreed not to file against him.

Myers' testimony at the same hearing supports the conclusion that he did not provide ineffective assistance of counsel. He recounted his communication with Braman, which involved 27 phone conversations with Braman throughout the case and 11 attorney/client letters. He also testified how he filed multiple motions the day after being appointed to represent Braman, and he provided Braman with all discovery he had received from the State in the case.

Myers also testified that in February 2017, he started working on a plea agreement at Braman's direction. From then, until the time Braman entered the no contest plea, Myers recalled how Braman was an active participant in the plea negotiations. In fact, Braman's dissatisfaction with the terms of the plea agreement also led Braman not to enter any plea at the March 2017 hearing. Myers continued to work on an acceptable plea agreement. When a plea agreement was reached, Myers spent an extended time with Braman to discuss the agreement before Braman entered a no contest plea. In support,

13

Myers pointed to Braman's initials on multiple pages of the plea agreement where alterations had been made.

Here, Braman has failed to satisfy either prong of the constitutional ineffective assistance of counsel inquiry for a postsentence motion to withdraw a plea. He has not established that Myers' conduct fell below an objective standard of reasonableness. Nor has he showed that, but for any alleged error, the result of the proceeding would have been different. See *Johnson*, 307 Kan. at 447.

For the same reasons, the district court did not err in rejecting Braman's claims that Myers coerced him into taking the plea and that he did not understand the terms of the plea. Braman had multiple opportunities not to enter his no contest plea, yet he chose to do so. Myers also testified that he would not have allowed Braman to plead if he had detected any hesitation on Braman's behalf.

Braman also argues that Myers had a conflict when representing him. This claim is also unpersuasive. To demonstrate that a conflict of interest resulted in ineffective assistance of counsel, a defendant has the burden of proving (1) the existence of an actual conflict of interest between the attorney and client and (2) that the conflict adversely affected the adequacy of the attorney's representation. *State v. Cheatham*, 296 Kan. 417, 448-49, 292 P.3d 318 (2013).

In the district court's written journal entry, it found that "[t]he Defendant failed to prove Robert Myers had a conflict of interest." Implicit in this conclusion is the fact the district court rejected Braman's contentions he told Myers about the existence of an alibi witness—a claim Myers denied at the March 2021 hearing. And as stated above, this court gives deference to the district court's factual findings and does not reweigh the evidence or assess witness credibility. See *Johnson*, 307 Kan. at 443. On appeal, Braman offers nothing to support his claim that a conflict existed aside from his own testimony at the March 2021 hearing. Without more, this court cannot conclude that Braman's claim

14

passes muster under the first prong of the inquiry. See *Cheatham*, 296 Kan. at 448. Thus, this court also rejects Braman's claim concerning a conflict of interest between himself and Myers.

In summary, the record establishes that Braman did not receive ineffective assistance of counsel from Myers, Myers did not coerce Braman into entering his no contest plea, and that Braman understood the plea agreement after discussing it extensively with Myers. Braman has not shown that the district court erred as a matter of law, based its decision on unsupported facts, or that its decision was otherwise unreasonable. The district court's factual findings are supported by substantial competent evidence. For these reasons, the district court did not abuse its discretion when it denied Braman's postsentence motion to withdraw a plea.

Affirmed.